**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**Gerard Peter MOCCIOLA,**
**Defendant, Appellant.**

**No. 89–1471.**

United States Court of Appeals,
First Circuit.

Heard Sept. 6, 1989.

Decided Dec. 5, 1989.

---

Steven D. Silin, with whom Paul F. Macri and Berman, Simmons & Goldberg, P.A., Lewiston, Me., were on brief, for defendant, appellant.

F. Mark Terison, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Augusta, Me., was on brief, for plaintiff, appellee.

Before SELYA, Circuit Judge, ALDRICH and GIBSON,* Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

Defendant-appellant Gerard Peter Mocciola, awoke one August morning in 1988 to the sounds of intruders shouting and his dog barking in his home. In the upstairs bedroom where he and his wife had been sleeping, defendant grabbed a loaded Browning Arms semi-automatic pistol and stepped into the darkened hallway. There he confronted the intruders: Maine State Police officers conducting a drug raid. One officer yelled at defendant to drop his gun. He did. In their subsequent search of the bedroom, police discovered three additional weapons, a total of 291 grams of cocaine in four different locations, a set of digital scales, cutting agents, and $35,000 in cash.

In the criminal proceedings that followed his arrest, the grand jury issued a five-count indictment charging defendant with various violations of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 924(c)(1). He elected to go to trial on Count V, the weapons charge,[1] and to plead guilty to Count IV, one of the cocaine possession charges. The three remaining counts were dropped. During the trial, defendant testified extensively concerning his cocaine use and dealing and the problems these had caused for his family. He also testified that the pistol had nothing to do with his illegal drug activity, but was present solely to protect his home and family. The jury acquitted.

Some months later the court sentenced defendant on Count IV, the cocaine possession charge. Based on the presentence report and applying the Federal Sentencing Guidelines, the court imposed a sentence of 78 months imprisonment, a term of five

---

* Of the Eighth Circuit, sitting by designation.

1. Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....
18 U.S.C. § 924(c)(1).

years of supervised release, a fine of $15,-000 to be paid immediately, an additional fine of $98,400 to be paid during the period of incarceration and supervised release, and a special felony assessment of $50. On this appeal defendant asserts that the court improperly considered uncharged conduct in determining his sentence, and improperly applied the weapons enhancement despite his acquittal on that charge. Defendant also challenges the constitutionality of the Sentencing Guidelines as applied by the district court. We affirm, noting additional facts as needed.

### 1. *Background*

Since their promulgation by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984, codified at 18 U.S.C. §§ 3551 *et seq.* and 28 U.S.C. §§ 991–998, the Sentencing Guidelines have been the subject of repeated attack. Earlier this year, in *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the Court upheld the Guidelines, finding no constitutional infirmity in the legislation or separation of powers problem in Congress' "placement" of the Sentencing Commission within the judicial branch of government. *Id.* at 664. Constitutional challenges are now limited to whether the Guidelines are constitutional as applied in a particular case.

The purpose of the Guidelines is not to remove the discretion judges historically have exercised when determining the appropriate sentence for an individual offender, but rather to reduce the often "unjusti-fi[ed]" and "shameful" consequences of the indeterminate-sentencing system of the past, when similarly situated offenders frequently received greatly disparate sentences. *Mistretta*, 109 S.Ct. at 651 (quoting S.Rep. No. 98–225 (1983)). For this reason the Commission promulgated a set of Guidelines based predominantly on a "charge offense" rather than "real offense" system. In other words, the offend-

er would be punished for "the offense for which he was convicted," as distinguished from the facts of the particular case. *United States v. Guerrero*, 863 F.2d 245, 248 (2d Cir.1988). This decision was a compromise, see Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L.Rev. 1 (1988), and it is widely recognized that the "charge offense" approach is not pure; "it has a number of real elements." *Guerrero*, 863 F.2d at 248 (citing Sentencing Guidelines ch. 1, pt. A, § 4(a), at p. 1.5). Some "flexibility [is retained] to provide individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." *Id.; see United States v. Seluk*, 873 F.2d 15 (1st Cir.1989) (per curiam). As a general matter, therefore, although weighted toward the charge offense end of the spectrum, the Sentencing Guidelines permit the sentencing court the discretion to consider certain uncharged conduct, within the limits delineated below.

### 2. *Uncharged Conduct*

There is no dispute concerning the process by which the court arrived at defendant's sentence. When preparing the presentence report the probation officer reviewed defendant's sworn testimony at his earlier trial and estimated that during the approximately eighteen months before his arrest, defendant had used or sold between 1291 and 1648 grams of cocaine. According to the Drug Quantity Table contained in U.S.S.G. § 2D1.1, this established a Base Offense Level of 26. Guideline § 2D1.1(b)(1) permits a two-level enhancement for firearms possession, which was then added. Guideline § 3E1.1(a) permits a two-level reduction for acceptance of responsibility, which was then subtracted,[2] leaving the final Base Offense Level at 26. The probation officer then computed defendant's criminal history and set it at catego-

---

**2.** The probation officer initially also added a two-level increase for obstruction of justice when Mocciola failed to report his ownership of a 40–acre parcel of land in North Monmouth, Maine. After Mocciola challenged this section of the presentence report, the government determined that Mocciola had accounted for this property and withdrew this recommended increase.

ry I. Combining these two calculations, the Sentencing Table in U.S.S.G. § Ch. 5, Pt. A established a sentencing range from 63–78 months. Finding defendant "a principal cocaine trafficker in the Androscoggin County Maine area," and "the magnitude of the trafficking activities [is] deserving of serious punishment," the court imposed the most severe sentence permitted by the Guidelines.

 The Sentencing Guidelines specifically provide that the sentencing court consider all "acts or omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The background commentary further provides that, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they are part of the same course of conduct or part of a common scheme or plan as the court of conviction." *Id.*, comment. (backg'd). Under our deferential standard of review, whether uncharged drugs are part of a common scheme or plan is a factual finding we will disturb only if clearly erroneous. *United States v. Wright*, 873 F.2d 437, 443–44 (1st Cir.1989). Because the court based its finding that "all of the drugs in question were sold as part of a common scheme or plan" on defendant's own testimony at his trial on Count V, we find a reasonable basis for the sentence and no clear error. *United States v. Ehret*, 885 F.2d 441, 444 (8th Cir.1989).

The contention that using trial testimony in this manner chills the right to a jury trial and, in effect, penalizes candor, we have already answered. "It is well established that statements made for the purpose of one case are not necessarily immunized from use in other trials." *United States v. Perez–Franco*, 873 F.2d 455, 460 (1st Cir. 1989). Defendant was not compelled to testify about his illegal drug habit and dealing; he did so freely; the fifth amendment was waived. *Id.* at 461. So long as the information concerning the quantity of drugs involved has "sufficient indicia of reliability to support its probable accura-

cy," the sentencing judge may consider it. *United States v. Roberts*, 881 F.2d 95, 106 (4th Cir.1989) (quoting U.S.S.G. § 6A1.3(a), p.s.). Defendant's voluntary sworn testimony clearly meets this standard.

### 3. *The Acquittal*

 Although we have not specifically addressed the issue of whether a sentencing court may consider a prior, related acquittal under the Sentencing Guidelines, several other circuits have done so. *See, e.g., United States v. Isom*, 886 F.2d 736, 738 & n. 3 (4th Cir.1989). ("A verdict of acquittal demonstrates only a lack of proof beyond a reasonable doubt; it does not necessarily establish defendant's innocence ... For facts at sentencing, the burden of proof by a preponderance obviously differs in a significant way from proof beyond a reasonable doubt."); *United States v. Juarez–Ortega*, 866 F.2d 747, 749 (5th Cir. 1989) (per curiam) ("Although the jury may have determined that the government had not proved all of the elements of the weapons offense beyond a reasonable doubt, such a determination does not necessarily preclude consideration of underlying facts of the offense at sentencing so long as those facts meet the reliability standard."); *United States v. Ryan*, 866 F.2d 604, 609 (3d Cir.1989) ("Before the guidelines were promulgated, a court was permitted to consider evidence on counts of which a defendant was acquitted in sentencing the defendant ... [T]he guidelines, as we read them, indicate that the Commission intended to permit sentencing courts to continue to consider such information...."). As we recently noted,

> Guideline § 1B1.3 requires courts to take account of "relevant conduct"—conduct that, very roughly speaking, corresponds to those actions and circumstances that courts typically took into account when sentencing prior to the Guidelines' enactment. Past practice, and authoritative case law, indicates that the Constitution does not, as a general matter, forbid such consideration.

*United States v. Wright*, 873 F.2d at 441 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)).

The Guidelines establish both the reason for the weapons enhancement and the circumstances in which it should be applied:

The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, an enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1(b)(1), comment. Two courts of appeals recently ruled that this provision passes constitutional muster. *United States v. Restrepo*, 884 F.2d 1294 (9th Cir.1989); *United States v. McGhee*, 882 F.2d 1095 (6th Cir.1989).

As in the case of uncharged conduct, the facts underlying a prior acquittal may be considered by the sentencing court when these facts "appear[ ] reliable." *United States v. Wright*, 873 F.2d at 441. Mocciola admitted possessing the loaded pistol; state police found three other weapons in his bedroom. The jury's not guilty verdict simply means that the government did not meet its considerable burden under the reasonable doubt standard. As this court has previously noted, "[c]ase law clearly establishes that the government need not prove facts used for sentencing 'beyond a reasonable doubt.' The Supreme Court has held that the 'preponderance standard satisfies due process.'" *Id.* (quoting *McMillan v. Pennsylvania*, 477 U.S. at 91, 106 S.Ct. at 2419). That standard has been easily met here; it is not clearly improbable that Mocciola's pistol was connected with the drug possession offense.

 Defendant's final argument is that the weapons enhancement permitted by the Guidelines creates a catch–22: He can plead guilty to the charge and be sentenced for firearms possession, or he can proceed to trial and, if acquitted, still be sentenced for firearms possession. This argument misperceives the distinction between a sentence and a sentence enhancement. Under 18 U.S.C. § 924(c)(1), had defendant been convicted of possessing a firearm in relation to drug trafficking, he would have received a *separate*, mandatory five-year sentence. Under the Guidelines, in contrast, possessing the firearm in connection to the drug offense added only 15 months to the sentence on the drug charge. Such enhancement is not a double jeopardy situation. *United States v. Juarez–Ortega*, 866 F.2d 747 (5th Cir.1989); *United States v. Bernard*, 757 F.2d 1439 (4th Cir.1985).

As the preceding discussion has demonstrated, the sentencing court properly applied the Guidelines when determining Mocciola's sentence. Therefore, the judgment of the district court is

AFFIRMED.