USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-2042 UNITED STATES OF AMERICA, Appellee, v. JORGE GONZALEZ-VAZQUEZ, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, U.S. District Judge] ___________________ _________________________ Before Selya, Boudin and Stahl, Circuit Judges. ______________ _________________________ Jose A. Fuentes Agostini, with whom Dominguez & Totti was on ________________________ _________________ brief, for appellant. Jose A. Quiles-Espinosa, Senior Litigation Counsel, with ________________________ whom Guillermo Gil, United States Attorney, Edwin O. Vazquez, _____________ _________________ Assistant United States Attorney, and Rosa Emilia Rodriguez- ________________________ Velez, Assistant United States Attorney, were on brief, for _____ appellee. _________________________ September 8, 1994 _________________________ SELYA, Circuit Judge. This criminal appeal requires SELYA, Circuit Judge. ______________ that we ascertain whether the district court erred either in denying appellant's motion to retract his guilty plea or in adding a two-level weapons enhancement when calculating the guideline sentencing range (GSR). Detecting no error, we affirm. I. I. __ The Background The Background ______________ On March 26, 1993, defendant-appellant Jorge Gonzalez- Vazquez (Gonzalez) pleaded guilty to conspiracy to import heroin, and conspiracy to possess heroin with the intent to distribute it. See 21 U.S.C. 963, 846, 952(a), and 841(a)(1). The ___ charges grew out of a sophisticated scheme or series of schemes, lasting more than 15 months, in which appellant and 23 codefendants imported large quantities of heroin from Hong Kong into the United States, and then distributed it. Appellant played numerous roles in this elaborate plot, sometimes buying heroin overseas, sometimes purveying drugs domestically, sometimes acting as a courier, and sometimes serving as a bodyguard. In return for appellant's guilty plea, the government agreed to recommend a sentence at the low end of the GSR but the agreement contained no stipulation as to the parameters of the GSR. The government also agreed to drop several other charges levelled against appellant. One charge remained unresolved: a count accusing appellant of using or possessing a firearm during and in relation to a drug-trafficking offense, in 2 violation of 18 U.S.C. 924(c)(1).1 As to that count, the plea agreement preserved appellant's right to trial. Approximately four months after tendering his guilty plea, appellant moved to withdraw it. The district court denied his motion. At the disposition hearing, the court invoked U.S.S.G. 2D1.1(b)(1) and boosted the base offense level (BOL) for appellant's possession of a dangerous weapon.2 After other adjustments had been made and appellant's criminal history score had been computed, a GSR of 262-327 months emerged. The prosecution recommended an incarcerative sentence at the nadir of the range, and the district court obliged. Apparently content not to exact a last pound of flesh, the government then moved to dismiss the unresolved firearms count. The court granted the government's motion. This appeal followed. ____________________ 1The statute provides in pertinent part: Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence, or drug trafficking crime, be sentenced to imprisonment for five years. . . . 18 U.S.C. 924(c)(1)(1988). 2The applicable guideline, U.S.S.G. 2D1.1(b)(1)(Nov. 1992), directs the sentencing court, if it finds that during the course of the crime the defendant possessed "a dangerous weapon (including a firearm)," to add two levels. 3 II. II. ___ The Motion to Withdraw The Motion to Withdraw ______________________ Appellant challenges the district court's denial of his plea-withdrawal motion, asserting that he advanced a "fair and just reason" for retracting his guilty plea, and that the district court should have given him safe passage. His asserted reason masquerades as a claim that, when he tendered his plea, he did not fully understand its consequences. Stripped of rhetorical flourishes, however, appellant's core complaint appears to be that he did not realize that his GSR would be so formidable. Even prior to the imposition of sentence, a defendant does not have an unqualified right to withdraw a guilty plea. See United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. ___ _____________ _______________ 1994); United States v. Buckley, 847 F.2d 991, 998 (1st Cir. _____________ _______ 1988), cert. denied, 488 U.S. 1015 (1989). Rather, a presentence _____ ______ motion to retract a plea can be granted "only upon an affirmative showing of a 'fair and just reason.'" Parrilla-Tirado, 22 F.3d _______________ at 371 (quoting Fed.R.Crim.P. 32(d)).3 The burden of proof rests with the defendant. See United States v. De Alba Pagan, ___ _____________ ______________ ___ F.3d ___, ___ (1st Cir. 1994) [No. 93-2018, slip op. at 2-3]; Parrilla-Tirado, 22 F.3d at 371. In deference to the intimate _______________ tri-cornered relationship among trial judge, prosecutor, and ____________________ 3Fed.R.Crim.P. 32(d) states in pertinent part: "If a motion for withdrawal of a plea of guilty . . . is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." 4 criminal defendant, we review a district court's denial of a request to withdraw a guilty plea solely for abuse of discretion. See United States v. Doyle, 981 F.2d 591, 594 (1st Cir. 1992); ___ _____________ _____ United States v. Pellerito, 878 F.2d 1535, 1538 (1st Cir. 1989). _____________ _________ Federal courts use a multi-factor test as an aid in ascertaining whether a proffered reason for withdrawal meets the criteria of Rule 32(d). This test is familiar, see, e.g., De ___ ____ __ Alba Pagan, ___ F.3d at ___ [slip op. at 2-3]; Parrilla-Tirado, __________ _______________ 22 F.3d at 371; Doyle, 981 F.2d at 594; Pellerito, 878 F.2d at _____ _________ 1537, and does not bear reiteration. Instead, we proceed directly to a factor-by-factor examination of appellant's plaint. 1. Plausibility. Appellant claims that his decision 1. Plausibility. ____________ to plead guilty was based upon the government's agreement to recommend a sentence at the low end of the GSR a recommendation that, to appellant's way of thinking, meant 210 months. But that assumption stemmed from a miscalculation on appellant's part a miscalculation fueled by his hope that there would be no weapons enhancement. It is a fact of law and life, too basic to warrant citation of authority, that a criminal defendant cannot jettison a guilty plea knowingly, intelligently, and voluntarily made merely because the sentencing judge calls a tune that is not to the defendant's taste. It is a corollary of this principle that, as we recently stated in a case comparable to this one, "the fact that a defendant misapprehends the likely guideline sentencing range does not constitute a fair and just reason for withdrawing a guilty plea." De Alba Pagan, ___ F.3d at ___ [slip op at 4]; _____________ 5 accord United States v. Williams, 919 F.2d 1451, 1456-57 (10th ______ _____________ ________ Cir. 1990), cert. denied, 499 U.S. 968 (1991); United States v. _____ ______ ______________ Garcia, 909 F.2d 1346, 1348 (9th Cir. 1990); United States v. ______ _____________ Bradley, 905 F.2d 359, 360 (11th Cir. 1990); United States v. _______ _____________ Stephens, 906 F.2d 251, 253 (6th Cir. 1990); United States v. ________ _____________ Jones, 905 F.2d 867, 868-69 (5th Cir. 1990); United States v. _____ _____________ Sweeney, 878 F.2d 68, 69-71 (2d Cir. 1989). _______ This is a particularly weak case for a defendant to suggest that we should bend the rule. The transcript of the change-of-plea hearing makes it pellucid that Gonzalez knew at the time that, regardless of the eventual outcome of the then- unresolved weapons charge, he still faced the prospect of an enhanced BOL at sentencing. During the hearing, his counsel stated in open court and in appellant's presence: I have also informed Mr. Gonzalez that it is the position of the U.S. attorney that, in the event that he would be acquitted of the gun charge, that is count 23, that they could ask or it could be possible that he would be found with a two point enhancement at the moment of the sentencing hearing. Counsel added that he explained to Gonzalez that this tactic "could possibly increase his offense level. . . ." Hence, the ambush of which appellant now complains was no ambush at all, but, rather, a frontal assault, with the government's troops marshalled in plain view from the very onset of hostilities. Appellant's articulated reason for seeking to scuttle his guilty plea is, therefore, not plausible. 2. Timing. The timing of a motion to withdraw a 2. Timing. ______ 6 guilty plea often serves as a gauge for measuring the legitimacy of a proffered reason. Belated requests, even if made before sentencing, are generally regarded as afterthoughts. Consequently, the "longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable consideration." Parrilla-Tirado, 22 F.3d at _______________ 373; accord Doyle, 981 F.2d at 595; Pellerito, 878 F.2d at 1541. ______ _____ _________ Here, appellant waited approximately four months after pleading guilty and two months after the release of his presentence investigation report (PSI Report) before moving to retract his plea.4 Given the totality of the circumstances that pertain here, appellant's lassitude serves to cast considerable doubt upon the legitimacy of his professed reason for seeking to change course. 3. Assertion of Innocence. "In determining whether a 3. Assertion of Innocence. ______________________ proposed plea withdrawal is fair and just, a defendant's assertion of innocence may weight the scales in favor of withdrawal, and conversely, the absence of a claim of innocence weights the opposite pan of the scale." Parrilla-Tirado, 22 F.3d ________________________ at 373; accord United States v. Kobrosky, 711 F.2d 449, 455 (1st ______ ______ _____________ ________ Cir. 1983). Appellant did not proclaim his innocence in his plea-withdrawal motion. To the contrary, at the disposition ____________________ 4The chronology is as follows. Appellant pled guilty on March 26, 1993. New counsel entered the case ten days thereafter. The probation department issued the PSI Report on June 1, 1993. On August 9, 1993, appellant filed his motion to withdraw his guilty plea. The district court sentenced appellant on August 19, 1993. 7 hearing he stated; "I know I committed a crime and I have to pay for it." Appellant's explicit admission of his guilt militates strongly against disturbing the ruling below. 4. Voluntariness. In reviewing the merits of a plea- 4. Voluntariness. _____________ withdrawal motion, an inquiring court must determine whether, in light of the defendant's proffered reason and any other newly disclosed facts, the guilty plea can still be deemed voluntary and intelligent. See United States v. Austin, 948 F.2d 783, 786- ___ _____________ ______ 87 (1st Cir. 1991). Appellant makes no challenge to the sufficiency of the Rule 11 proceeding in this case, and, indeed, the colloquy is a model of thoroughness. We need go no further. It is apparent that no hint of error tainted the district court's refusal to allow appellant to retract his guilty plea. Consequently, Gonzalez's conviction must stand. III. III. ____ The Sentence The Sentence ____________ Appellant also challenges the district court's reliance on U.S.S.G. 2D1.1(b)(1) in the course of formulating his sentence. He maintains that his alleged possession of the firearm, and, hence, the applicability of the guideline, was not proven by a fair preponderance of the evidence; and that, in any event, the guideline's applicability had to be demonstrated beyond a reasonable doubt inasmuch as the increase imposed under the guideline is in reality an additional sentence, not a sentencing enhancement. We do not accept either contention. 8 1. Sufficiency of the Proof. Appellant's initial 1. Sufficiency of the Proof. __________________________ sentencing sortie is effortlessly repulsed. In gauging the sufficiency of the factual foundation on which a sentence rests, we must "accept the findings of fact of the district court unless they are clearly erroneous," while at the same time "giv[ing] due deference to the district court's application of the guidelines to the facts." 18 U.S.C. 3742(e); see United States v. Ruiz, ___ _____________ ____ 905 F.2d 499, 507 (1st Cir. 1990); United States v. Mocciola, 891 _____________ ________ F.2d 13, 16 (1st Cir. 1989). In the case at hand, the district court's factfinding survives clear-error review. This conclusion is reached more easily because of the Sentencing Commission's specific instruction that section 2D1.1(b)(1) "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. 2D1.1(b)(1), comment. A sentencing court must, of course, honor this type of instruction. See, e.g., United States v. Fiore, 983 F.2d 1, 2 ___ ____ ______________ _____ (1st Cir. 1992) (explaining that the Sentencing Commission's interpretation of a guideline should be followed unless it is "arbitrary, unreasonable, inconsistent with the guideline's text, or contrary to law"), cert. denied, 113 S. Ct. 1830 (1993). _____ ______ Here, the record supports a finding that appellant served as a bodyguard while one of his coconspirators negotiated the terms of a proposed narcotics transaction with a confidential informant. It likewise supports a finding that appellant carried 9 a pistol during the encounter.5 Under these circumstances, we must uphold the district court's conclusion that, on the date of appellant's arrest, he possessed a firearm in the course of an aborted drug transaction. Appellant tries to stave off the near-irresistible force of these findings in two ways. First, he suggests that, to warrant an adjustment under U.S.S.G. 2D1.1(b)(1), the evidence must establish the same panoply of elements that are needed to prove the statutory "carrying and use" of a weapon in furtherance of a drug crime, see 18 U.S.C. 924(c)(1).6 The suggestion is ___ fanciful, for the guideline can be triggered with considerably greater ease. The point is readily susceptible to illustration. For one thing, while mere possession of a firearm during a drug- trafficking episode does not satisfy the elements of the statute, see United States v. Castro-Lara, 970 F.2d 976, 983 (1st Cir. ___ _____________ ___________ 1992), cert. denied, 113 S. Ct. 2935 (1993), the reverse is often _____ ______ true under the guideline, see, e.g., Ruiz, 905 F.2d at 507 ("Mere ___ ____ ____ ____________________ 5The government suggests, with some foundation in the record, that when the drug deal began to sour, appellant attempted to use the pistol against a federal agent. Because we do not need to reach the question of whether the proof here is sufficient to support a conviction under 18 U.S.C. 924(c)(1), we abjure comment on the reliability of the evidence underpinning this more menacing scenario. 6The reader will recall that the grand jury originally charged appellant under that statute; that the charge was not compromised as part of the plea agreement; that the parties anticipated that the section 924(c)(1) count would be tried subsequently; and that, eventually, the government dropped the charge. 10 possession of a firearm can trigger the two level increase; there is no requirement that the gun actually be used in perpetrating the drug crime, or that such use be intended,"); United States v. _____________ Green, 889 F.2d 187, 189 (8th Cir. 1989) (similar); United States _____ _____________ v. Paulino, 887 F.2d 358, 360 (1st Cir. 1989) (similar). For _______ another thing, the "clearly improbable" language quoted above makes a huge difference. Under the statute, the government's burden of persuasion never varies. Under the guideline, however, once the underlying crime and the presence of a firearm have been established, the burden then shifts to the defendant to show, or at least produce some evidence of, "the existence of special circumstances that would render it 'clearly improbable' that the weapon's presence has a connection to the narcotics trafficking." United States v. Corcimiglia, 967 F.2d 724, 728 (1st Cir. 1992) _____________ ___________ (quoting Commentary). This distinction is of paramount importance here, as the record justifies a finding of possession, and appellant has neither produced nor pointed to the existence of any evidence indicating the improbability of a facilitative nexus between the gun and the crime. Appellant's next effort at annihilating the two-level increase amounts to an attack on the reliability of the government's proof. The fusillade misses the target. To be sure, the court's findings are based primarily on the PSI Report, which, in turn, relies heavily on grand jury testimony, coconspirators' statements, and other hearsay. But appellant's castigation of this evidence overlooks the special nature of 11 sentencing proceedings. In the sentencing phase of a case, the Federal Rules of Evidence do not apply. Thus, "[f]acts contained in a presentence report ordinarily are considered reliable evidence for sentencing purposes." United States v. ______________ Morillo, 8 F.3d 864, 872 (1st Cir. 1993) (citing cases). By like _______ token, grand jury testimony may be consulted for sentencing purposes. See United States v. Zuleta-Alvarez, 922 F.2d 33, 36 ___ ______________ ______________ (1st Cir. 1990) ("The sentencing court is free to rely upon outside evidence, including hearsay evidence that has never been subject to cross-examination."), cert. denied, 500 U.S. 927 _____ ______ (1991). Particularly where, as here, the defense has adduced no countervailing evidence, the district court is entitled to rely upon the PSI Report, grand jury testimony, and the like. See ___ Morillo, 8 F.3d at 872; United States v. Garcia, 954 F.2d 12, 19 _______ _____________ ______ (1st Cir. 1992); United States v. Iguaran-Palmar, 926 F.2d 7, 10 _____________ ______________ (1st Cir. 1991); Ruiz, 905 F.2d at 508. ____ 2. Use of the Preponderance Standard. Appellant's 2. Use of the Preponderance Standard. ___________________________________ fallback position is that, even if the proof suffices on a preponderance standard, using that standard transgresses his due process rights. He hinges this claim on the thesis that the increase in his sentence attributable to the section 2D1.1(b)(1) adjustment (agreed by the parties to have been 52 months) is roughly equivalent to the length of the mandatory minimum sentence for violating 18 U.S.C. 924(c)(1) (60 months), and, therefore, demands proof beyond a reasonable doubt. Though we give appellant's counsel high marks for ingenuity, his thesis 12 does not earn a passing grade. In the first place, appellant failed to unfurl the thesis in the lower court. Accordingly, it is procedurally defaulted and merits rejection on that bias alone. See United ___ ______ States v. Dietz, 950 F.2d 50, 55 (1st Cir. 1991) ("We have ______ _____ repeatedly ruled, in connection with sentencing as in other contexts, that arguments not seasonably addressed to the trial court may not be raised for the first time in an appellate venue.") (collecting cases). In the second place, the thesis lacks substance. It is well settled that a sentencing proceeding differs from a trial; by definition, the defendant's guilt has been established the presumption of innocence has dissipated, and, consequently, the prosecution need not prove the facts upon which it relies for sentencing purposes beyond a reasonable doubt. See McMillan v. ___ ________ Pennsylvania, 477 U.S. 79, 91 (1986); United States v. Tardiff, ____________ _____________ _______ 969 F.2d 1283, 1289 (1st Cir. 1992); United States v. Wright, 873 _____________ ______ F.2d 437, 441 (1st Cir. 1989). This rule does not offend due process. See McMillan, 477 U.S. at 91; see also United States v. ___ ________ ___ ____ _____________ Vinson, 886 F.2d 740, 742 (4th Cir. 1989) (holding that in ______ sentencing proceedings due process does not necessitate a level of proof greater than a preponderance of the evidence), cert. _____ denied, 493 U.S. 1062 (1990). Inspected in this light, ______ appellant's constitutional challenge fails. Nor does it make a significant difference that the government originally pressed charges under 18 U.S.C. 13 924(c)(1), quoted supra note 1. After all, the fact that a _____ defendant is not charged, or could not be convicted, under section 924(c) is not determinative of whether a weapons enhancement may be appropriate under the sentencing guidelines. See United States v. Jackson, 3 F.3d 506, 509 (1st Cir. 1993); ___ ______________ _______ see also Mocciola, 891 F.2d at 17 (holding that even the facts ___ ____ ________ underlying a prior acquittal on a weapons charge may be considered by the sentencing court for enhancement purposes).7 We see no reason why the same rule should not apply where, as here, the prosecution simply dismisses the weapons count. And we think it is immaterial that, in the plea agreement, appellant reserved the right to trial on the statutory weapons charge. Appellant makes a last-ditch effort to salvage his due process claim. He revives the infamous "Catch-22" argument that this court rejected in Mocciola, but with a twist. In Mocciola, ________ ________ the defendant, who was charged with both drug trafficking and violating section 924(c), argued that the weapons enhancement permitted by the guidelines created a "Catch-22" because, in respect to the firearms charge, whether he pled guilty or earned an acquittal after trial did not really matter. See Mocciola, ___ ________ ____________________ 7Mocciola is a mainstream holding, not, as appellant ________ portrays it, a waif in the wilderness. See, e.g. United States ___ ____ _____________ v. Juarez-Ortega, 866 F.2d 747, 749 (5th Cir. 1989) (per curiam) _____________ ("Although the jury may have determined that the government had not proved all of the elements of the weapons offense beyond a reasonable doubt, such a determination does not necessarily preclude consideration of underlying facts of the offense at sentencing so long as those facts meet the reliability standard."); United States v. Romano, 825 F.2d 725, 729 (2d Cir. _____________ ______ 1987) (similar); United States v. Bernard, 757 F.2d 1439, 1444 _____________ _______ (4th Cir. 1985) (similar). 14 891, F.2d at 17. We dismissed this argument, reasoning that it "misperceives the distinction between a sentence and a sentence enhancement." Id. at 17. In so holding, we commented that the ___ guideline adjustment added only 15 months to Mocciola's sentence while a conviction under the statute would have yielded a mandatory 60-month consecutive sentence. Appellant pounces on this comment. He contrasts it with his situation, observing that the additional time tacked onto his sentence as a result of the guideline enhancement (52 months) is nearly equal to the prescribed statutory punishment (60 months). We do not believe that this circumstance makes a legally relevant difference. A sentence is a sentence. Conversely, an enhancement is an enhancement here, two levels, regardless of the BOL and the incremental effect of the enhancement on any particular sentence is the product of the interaction of a myriad of factors. The increase in the ensuing sentence, whatever the duration, neither alters the enhancement's fundamental character nor bears on whether the facts underlying it must be established by a different quantum of proof. Cf. United States v. Rehal, 940 ___ _____________ _____ F.2d 1, 6 (1st Cir. 1991) (holding that enhancing a sentence because of a defendant's perjurious testimony does not require proof by the same standard as a perjury charge, but need only be proved by a preponderance of the evidence). In short, appellant's complaint about the length of the increment in his case might appropriately be addressed to Congress or the 15 Sentencing Commission; it cannot rewardingly be addressed to the courts. Affirmed. Affirmed. ________ 16