**UNITED STATES of America,**
**Appellee,**

v.

**Cesar Orlando TORRES–ROSA, a/k/a Lando, a/k/a Orlan, Defendant, Appellant.**

**No. 98–2250.**

United States Court of Appeals,
First Circuit.

Heard March 6, 2000.

Decided March 27, 2000.

**6**

Gabriel Hernandez Rivera, for Appellant.

Michelle Morales, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jorge E. Vega–Pacheco, Assistant United States Attorney, were on brief, for Appellee.

Before TORRUELLA, Chief Judge, SELYA and LIPEZ, Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Cesár Orlando Torres–Rosa pled guilty to a charge that he had conspired to possess, with intent to distribute, large quantities of cocaine. *See* 21 U.S.C. §§ 841(a)(1), 846. On October 1, 1998, the district court imposed a 294–month incarcerative sentence. Torres–Rosa appeals, advancing three assignments of error. We address each claim separately, discussing the pertinent facts as we go along. In the end, we reject the appeal.

█ 1. *The Status of the United States Attorney.* Apparently invoking the Appointments Clause of the United States Constitution, art. II, § 2, cl. 2, and principles of separation of powers—his perfunctory treatment of the issue makes it hard to tell—the appellant asseverates that the indictment against him should have been dismissed because the incumbent United States Attorney for the District of Puerto Rico, Guillermo Gil, holds that office unconstitutionally (thus negating the actions of the grand jury, convened by Gil, that indicted the appellant). The historical facts are not set forth by the appellant, but we glean them from public records of impeccable integrity. *See* Fed.R.Evid. 201.

On May 3, 1993, the Attorney General appointed Charles Fitzwilliams as interim United States Attorney for the District of Puerto Rico. *See* 28 U.S.C. § 546(a). The President did not nominate a candidate for this office within 120 days, and Fitzwilliams's appointment lapsed on September 4, 1993. *See id.* § 546(c)(2). Five days later, the judges of the district court appointed Gil as the acting United States Attorney pursuant to 28 U.S.C. § 546(d). Because the President has not essayed to appoint a successor, Gil has continued to serve in that capacity for upwards of six years.

The legality of Gil's abnormally long tenure as an interim appointee is controversial. *Compare United States v. Peralta–Ramírez,* 83 F.Supp.2d 263 (D.P.R.2000) (Cerezo, J.) (holding continued service invalid) *with United States v. Sotomayor Vazquez,* 69 F.Supp.2d 286 (D.P.R.1999) (Fusté, J.) (holding continued service valid). Be that as it may, the appellant's effort to raise the question fails. We explain briefly.

█ To begin with, the appellant presents the point in an offhand manner that demeans its gravity. He eschews any developed argumentation, attempting instead to adopt the reasoning and authorities set forth by the parties in "other cases where the same, identical issue has been recently raised." Appellant's Br. at 16. Standing alone, vaguely identified, secondhand argumentation does not suffice to put a matter in play at the appellate level. The appellant's entreaty is of this genre. It invites the court to research the incidence of cases in which the particular issue has been raised and to rummage through the papers

in those cases. We decline this invitation to do counsel's homework.

■ We have cautioned before that adoption of arguments by reference is a tricky business. *See United States v. David*, 940 F.2d 722, 727 (1st Cir.1991). As a briefing technique, adoption should be employed sparingly. The party seeking to adopt an argument has a burden, at the very least, to ensure that it is squarely before the court and to explain how and why it applies in his case. *See id.* at 737 (warning that adoption "cannot occur in a vacuum"). Here, the appellant failed to make this minimal showing. His lackadaisical attempt to incorporate by reference others' arguments thus did not adequately develop the status issue as it pertains to his appeal. *See id.; cf. Executive Leasing Corp. v. Banco Popular*, 48 F.3d 66, 67–68 (1st Cir.1995) (rejecting attempt to incorporate memoranda filed in the district court by reference).

■ If more were needed—and we doubt that it is—the issue of Gil's status is also procedurally defaulted because the appellant never raised it in the district court. "If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." *Teamsters Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 21 (1st Cir.1992). This principle applies with undiluted force in criminal cases. *See, e.g., United States v. Bongiorno*, 110 F.3d 132, 133 (1st Cir.1997); *United States v. Slade*, 980 F.2d 27, 30 (1st Cir.1992). The record here reflects no excusatory circumstances.

Thus, since the appellant failed to mention the status issue below, he has forfeited the right to pursue it in an appellate venue.[1]

*2. The Career Offender Determination.* On April 21, 1998, pursuant to a plea agreement (the Agreement) entered into under Fed.R.Crim.P. 11(e)(1)(b), the appellant changed his plea and confessed his guilt to one count of the indictment. In pertinent part, the Agreement (1) confirmed that he would be exposed to a sentence somewhere between ten years and life imprisonment; (2) stipulated the drug quantity to be attributed to him for sentencing purposes (15–50 kilograms); (3) assured him that the government would not oppose full credit for acceptance of responsibility (three levels); (4) provided for dismissal of the remaining counts lodged against him; (5) left open his criminal history score; and (6) obligated the government to recommend a 135–month term of immurement "as the appropriate sentence to be imposed by the Court." The Agreement expressly noted that its provisions (including the sentencing recommendation) were not binding on the court, and the change-of-plea colloquy confirmed this admonition.

The probation department proceeded to prepare the presentence investigation report (PSI Report). The PSI Report revealed that the appellant had numerous prior convictions, including two Puerto Rico felony convictions for crimes of violence. This checkered history had the effect of placing him in career offender status, *see* U.S.S.G. § 4B1.1 (1997), and boosted his guideline sentencing range to 262–327 months.[2] Consequently, the

---

1. The appellant's suggestion that we nonetheless can review his claim for plain error leads nowhere. Even were we inclined to undertake such an excursion, it would propel us down a blind alley. This court, in an analogous case, recently found no plain error arising out of Gil's participation in criminal proceedings. *See United States v. Colon–Muñoz*, 192 F.3d 210, 219 n. 12 (1st Cir.1999).

2. Under the sentencing guidelines, an adult defendant convicted of a crime of violence or

a drug-related felony is treated as a career offender if he had two or more previous felony convictions for such crimes. *See* U.S.S.G. § 4B1.1; *see also United States v. Cordero*, 42 F.3d 697, 700 (1st Cir.1994); *United States v. Piper*, 35 F.3d 611, 616 (1st Cir.1994). Typically, career offender status serves to elevate the defendant's adjusted offense level (and, hence, his sentence). *See, e.g., Piper*, 35 F.3d at 616.

court, at the disposition hearing, disregarded the government's more lenient recommendation and imposed a 294-month sentence.

■ Against this backdrop, the appellant argues that the district court erred in including the Puerto Rico convictions when calculating his criminal history score. In advancing this argument, he relies principally on the Sentencing Commission's statement that, for purposes of the career offender guideline, "[p]rior convictions may represent convictions in the federal system, fifty state systems, the District of Columbia, territories, and foreign, tribal, and military courts." U.S.S.G. § 4A1.1, comment. (backg'd). Pointing out that Puerto Rico is not mentioned specifically in this litany and that the grand jury is alien to Puerto Rico's criminal justice system, the appellant posits that convictions from its courts cannot be counted in amassing his criminal history score.[3]

■ We need not tarry. The appellant did not make this argument below, and it is therefore reviewable only for plain error. *See United States v. Rivera Alicea*, 205 F.3d 480, 485–86 (1st Cir.2000) (noting the applicability of plain error review to unpreserved sentencing errors); *United States v. Lilly*, 13 F.3d 15, 18 n. 6 (1st Cir.1994) (same). The appellant cannot prevail under this rigorous standard.

We confronted the identical issue, in an identical posture, in *United States v. Morales–Diaz*, 925 F.2d 535 (1st Cir.1991). In that case, we rejected the defendant's claim of plain error, noting that he "simply asserts the syllogism that (1) to qualify under the career offender guideline, the prior felony offenses must be state or federal offenses; (2) Puerto Rico is not a state; and (3) therefore his Puerto Rico conviction is not a prior felony offense under the career offender guideline." *Id.* at 540. We found that this syllogism

"completely ignores the body of case law recognizing that Congress has accorded the Commonwealth of Puerto Rico 'the degree of autonomy and independence normally associated with States of the Union....'" *Id.* (quoting *Examining Bd. v. Flores de Otero*, 426 U.S. 572, 594, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976)). Accordingly, we concluded that, because the appellant had not shown "that the Sentencing Commission meant to exclude felony convictions in Puerto Rico Commonwealth Courts for enhancement purposes," no plain error inhered. *Id. Morales–Diaz* controls here.

■ **3. *The Motion for a Continuance.*** On the day of the disposition hearing, the appellant asked the district court to stay sentencing and continue the matter so that he could file a motion to withdraw his guilty plea. He claimed that the effect of the prior Puerto Rico convictions undermined his rationale for entering into the Agreement, and that when he changed his plea, he was unaware of those convictions and of their likely deleterious impact on his sentence. The district court denied the motion. We discern no abuse of discretion.

■ Because the record on the point is fully developed, we go directly to the crux of the matter and treat the appellant's motion for continuance as a motion to withdraw his guilty plea. The appellant made his motion before the imposition of sentence and thus had the burden of showing a fair and just reason for permitting the retraction. *See United States v. Parrilla–Tirado*, 22 F.3d 368, 371 (1st Cir. 1994); *see also* Fed.R.Crim.P. 32(e). Although an inquiry into the existence *vel non* of a fair and just reason encompasses the totality of circumstances, we have paid particular heed to four elements. They include the plausibility of the proffered reason, the timing of the attempted retraction, the presence or absence of a protesta-

---

**3.** The appellant does not question Puerto Rico's status, but, rather, whether Puerto Rico comes within the sweep of the Sentenc-

ing Commission's language. Accordingly, we take no view of the status question.

tion of innocence, and whether the circumstances cast serious doubt on the bona fides of the original plea. *See Parrilla–Tirado,* 22 F.3d at 371; *United States v. Doyle,* 981 F.2d 591, 594 (1st Cir.1992).

 The record makes manifest that the appellant cannot satisfy these criteria. First and foremost, it is simply not plausible that he somehow "forgot" his Puerto Rico convictions. It is more plausible, of course, that he failed to appreciate how these convictions would affect the computation of his sentencing range; but the fact that a defendant finds himself faced with a stiffer sentence than he had anticipated is not a fair and just reason for abandoning a guilty plea. *See United States v. Gonzalez–Vazquez,* 34 F.3d 19, 22 (1st Cir.1994) (collecting cases); *United States v. De Alba Pagan,* 33 F.3d 125, 127 (1st Cir.1994) (holding that "the fact that a defendant misapprehends the likely guideline sentencing range does not constitute a fair and just reason for withdrawing a guilty plea"). In fine, a defendant's "second thoughts about ... the wisdom of his earlier decision" do not themselves comprise a plausible basis for allowing him to withdraw an earlier guilty plea. *Parrilla–Tirado,* 22 F.3d at 371.

Timing, too, works against the appellant. "The timing of a motion to withdraw a guilty plea often serves as a gauge for measuring the legitimacy of a proffered reason." *Gonzalez–Vazquez,* 34 F.3d at 23. In this case, the appellant pled guilty on April 21, 1998. The probation officer filed the PSI Report—which made pellucid the appellant's career offender status—on August 20, 1998. Yet, it was not until October 1st that the appellant sought to retract his guilty plea.

The record contains no documented explanation for why the appellant waited until the clock was striking midnight to mount a challenge. Given the lack of such an explanation, the case law strongly suggests that a delay of this magnitude weighs against permitting a last-minute plea withdrawal. *See, e.g., United States*

*v. Isom,* 85 F.3d 831, 839 (1st Cir.1996) (two-month delay); *Gonzalez–Vazquez,* 34 F.3d at 23 (four-month delay); *United States v. Ramos,* 810 F.2d 308, 311–12 (1st Cir.1987) (twelve-day delay); *United States v. Crosby,* 714 F.2d 185, 192 (1st Cir.1983) (eight-week delay); *United States v. Keefe,* 621 F.2d 17, 20 (1st Cir. 1980) (twenty-day delay).

 The third element is cut and dried. The appellant did not assert his innocence below, and he has not done so in this venue. The absence of an assertion of innocence counsels against allowing the plea to be withdrawn. *See Parrilla–Tirado,* 22 F.3d at 373; *Ramos,* 810 F.2d at 312.

 Finally, the appellant makes no effort to denigrate the adequacy of the change-of-plea colloquy or to suggest a violation of Fed.R.Crim.P. 11. Nor could he: the plea colloquy in this case is a model of clarity and completeness. The appellant, however, does make one claim that goes to the knowing, voluntary, and intelligent nature of his guilty plea: his assertion that, when he pled, he was unaware that he would be regarded as a career offender. Even if true, that argument is unpersuasive. A defendant's miscalculation—even a gross miscalculation—anent the likely length of his sentence does not render a guilty plea unknowing, involuntary, or unintelligent in any legally cognizable sense. *See Gonzalez–Vazquez,* 34 F.3d at 22 (collecting cases); *De Alba Pagan,* 33 F.3d at 127.

 Despite these precedents, the appellant implores us that he should be allowed to withdraw his guilty plea because he did not get the benefit of his bargain. He notes that, in the Agreement, the government said that it would recommend a 135–month sentence—yet he received a much more onerous penalty. While the appellant's consternation is understandable, his argument is not legally sound.

In the first place, the Agreement (which, in all events, was not binding on the district court) did not promise the appellant a particular sentence. Moreover, it left open the matter of the appellant's criminal history score (and, thus, effectively left open the extent of the applicable guideline sentencing range). At the change-of-plea hearing the appellant explicitly acknowledged his awareness that the court, after reviewing the PSI Report, would be free to sentence him to any term up to life imprisonment. And at that juncture, the appellant was in a far better position than either the prosecutor or the court to supply the missing integer in the sentencing equation: his prior criminal record. Under these circumstances, the appellant cannot claim to be unfairly surprised that his hopes were dashed.

In the second place, the appellant, notwithstanding his disclaimer, received the benefit of his bargain. The sentencing court abided by the drug quantity stipulation—a stipulation that obviously favored the appellant. The court likewise awarded the three-level decrease for acceptance of responsibility and dismissed the other charges against the appellant. For its part, the government performed as it had promised, and made the sentencing recommendation to which it had agreed. That the appellant did not receive a benefit that he had hoped to attain but which had not been assured—a shorter sentence—in no way made his bargain illusory. *See United States v. McDonald,* 121 F.3d 7, 10–11 (1st Cir.1997).

We need go no further. In this case, all roads lead to Rome. Because the relevant factors unanimously favored a denial of the appellant's plea-withdrawal request, the district court did not abuse its discretion in refusing to grant a continuance for the purpose of filing what would have been a futile motion.

***Affirmed.***