**UNITED STATES of America,**
**Appellee,**

v.

**Domingo MERCEDES MERCEDES,**
**Defendant, Appellant.**

**No. 04–2490.**

United States Court of Appeals,
First Circuit.

Submitted Oct. 11, 2005.

Decided Nov. 10, 2005.

Anita Hill Adames on brief for appellant.

H.S. Garcia, United States Attorney, Nelson Pérez–Sosa and German A. Rieckehoff, Assistant United States Attorneys, on brief for appellee.

Before SELYA, Circuit Judge, COFFIN and CYR, Senior Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Domingo Mercedes Mercedes entered a guilty plea to a single-count indictment charging possession with intent to distribute one kilogram or more of heroin. *See* 21 U.S.C. § 841(a)(1). The district court sentenced him to serve a 120–month incarcerative term—the mandatory minimum for such an offense. *See* *id.* § 841(b)(1)(A)(i). This appeal followed. In it, the appellant asserts that (i) the comments of both the district court (through the magistrate judge) and his former counsel regarding his potential eli-

gibility for the so-called safety valve were misleading and rendered his plea involuntary, and (ii) his former attorney's failure to investigate his criminal history deprived him of the effective assistance of counsel. We find the first claim unavailing and the second premature. Consequently, we affirm the judgment below.

## I. BACKGROUND

Because this appeal follows a guilty plea, we draw the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing. *United States v. Brewster*, 127 F.3d 22, 24 (1st Cir.1997); *United States v. Dietz*, 950 F.2d 50, 51 (1st Cir.1991).

On February 15, 2004, the appellant stepped off a ferry at Fajardo, Puerto Rico, and into a narcotics interdiction trap set by agents of the federal Drug Enforcement Administration. The appellant consented to a search of a paper bag in his possession. The search revealed 1.246 kilograms of a substance later identified as heroin. The appellant's arrest and indictment followed apace.

At a change-of-plea hearing held before a magistrate judge on May 17, 2004, the appellant entered a guilty plea to the single count of the indictment pursuant to a plea agreement (the Agreement). In pertinent part, the Agreement (i) confirmed the appellant's admission that he was guilty of possession with intent to distribute one kilogram or more of heroin; (ii) made clear that, by statute, the offense carried a minimum penalty of ten years in prison and a maximum penalty of life; (iii) obligated the government to recommend guideline sentencing adjustments reflecting the appellant's minor role in the offense and acceptance of responsibility, *see* USSG §§ 3B1.2(b), 3E1.1; (iv) noted that

the appellant would qualify for an additional downward adjustment under the safety valve provision, *id.* § 5C1.2, if he had no more than one criminal history point (but cautioned that the government would enter no stipulation regarding the appellant's criminal history); (v) predicted that the appellant would have a guideline sentencing range (GSR) of 46–57 months so long as he qualified for the safety valve (but cautioned that the length of the sentence imposed would be left entirely to the district court's discretion); (vi) declared that the appellant would have no right to withdraw his plea as a result of any subsequent dissatisfaction with the sentence actually imposed; and (vii) memorialized the appellant's assurance that he was entering the plea freely and voluntarily.

The magistrate judge went over the Agreement with the appellant in open court. *See* Fed.R.Crim.P. 11(b)(1). In response to the judge's questions, the appellant stated that he had fully discussed the terms of the Agreement with his lawyer and understood them. He also conceded that he would not be allowed to withdraw his plea if the court rejected the government's sentencing recommendations.

After establishing the factual basis for the plea, the magistrate judge advised the appellant of the panoply of rights he was waiving and found that the plea was being entered voluntarily. In regard to the particulars of the safety valve provision, the following colloquy ensued:

**THE MAGISTRATE JUDGE:** Okay, in this case ... should you comply with the safety valve your offense level could be further decreased two levels. Also you would not be subject to any mandatory minimum.

So, [in that event] you would be subject to ... a sentencing range of 46 to 57 months. If you do not comply with safety valve, you have to be sentenced to

120 months, that's ten years, do you understand that?

**MR. MERCEDES:** Yes.

**THE MAGISTRATE JUDGE:** Okay, now to qualify for the safety valve, you can have no more than one criminal history point, prior criminal history.... Do you understand those conditions that ha[ve] to be met for safety valve to apply?

**MR. MERCEDES:** Yes, I understand.

. . .

**THE MAGISTRATE JUDGE:** Okay, and as to prior criminal history, I understand at this time you don't have any criminal history and that's what it appears to be, correct Mr. Vazquez?

**ATTORNEY VAZQUEZ [DEFENSE COUNSEL]:** Yes, Your Honor.

. . .

**THE MAGISTRATE JUDGE:** Okay, what I do suggest is, and obviously I'm not going to get into this, but if the government should have additional questions, to notify Mr. Mercedes as soon as possible, otherwise that would be deemed, or should be deemed at the time of sentence, like a statement.

Despite the direct question as to his prior criminal history, the appellant did not disclose that, at the time of the change-of-plea hearing, he was just wrapping up a term of supervised release related to a prior conviction for smuggling and harboring aliens. *See* 8 U.S.C. § 1324.

In due course, the district judge accepted both the magistrate judge's change-of-plea recommendation and the appellant's guilty plea. A probation officer subsequently prepared the PSI Report, which recounted the appellant's criminal history (including the prior conviction). Accordingly, the PSI Report assigned the appel-

lant a criminal history score of three based on one criminal history point for the prior conviction and two points for having committed the narcotics offense while serving a term of supervised release. This placed the appellant in criminal history category II; rendered him ineligible for the safety valve reduction, *see* 18 U.S.C. § 3553(f); USSG § 5C1.2; *see also United States v. Ortiz–Santiago*, 211 F.3d 146, 150–1 (1st Cir.2000) (explaining the operation of the safety valve); and made applicable the 120–month statutory minimum sentence. On September 23, 2004, the district court imposed a sentence of that length.

## II. THE CHANGE–OF–PLEA COLLOQUY

The appellant's principal argument on appeal is that, in electing to plead guilty, he relied on misleading statements that prompted him to believe that he would secure the benefit of the safety valve provision (and, thus, a lower sentence). The appellant says that he would not have pleaded guilty but for this mistaken impression and that, therefore, his plea was involuntary. We find this argument unconvincing.

Where, as here, a defendant fails to object contemporaneously to a particular aspect of change-of-plea proceedings, appellate review of a belatedly asserted objection is for plain error. *United States v. Vonn*, 535 U.S. 55, 63, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). In order to prevail under this rigorous standard, the defendant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir.2001).

■ Withdrawing a guilty plea is not an absolute right. *See* Fed.R.Crim.P. 11(d)(2)(B) (requiring a defendant to show a "fair and just" reason for withdrawal). The barriers to withdrawal of a guilty plea become more formidable when, as in this case, the request is not made until after sentence has been imposed. *Vonn,* 535 U.S. at 72, 122 S.Ct. 1043. While an evaluation of the reason for the requested withdrawal of a guilty plea entails an appraisal of the totality of the circumstances, the case law suggests that an inquiring court should give particular weight to four elements: (i) the plausibility of the proffered reason, (ii) the timing of the attempted retraction, (iii) the presence or absence of a claim of innocence, and (iv) whether the circumstances cast serious doubt on the bona fides of the original plea. *United States v. Torres–Rosa,* 209 F.3d 4, 8–9 (1st Cir.2000).

■ Here, the reason proffered as a justification for the appellant's attempted withdrawal of his guilty plea relates to the statements of the magistrate judge and the appellant's former counsel at the change-of-plea hearing. His basic complaint is that he received a harsher sentence than those statements had led him to anticipate. There is a signal problem with this approach: "the fact that a defendant finds himself faced with a stiffer sentence than he had anticipated is not a fair and just reason for abandoning a guilty plea." *Id.* at 9. Cases holding to this effect are legion. *See, e.g., United States v. Rodríguez–León,* 402 F.3d 17, 26 (1st Cir.2005); *United States v. Moore,* 362 F.3d 129, 135 (1st Cir.2004); *Miranda–González v. United States,* 181 F.3d 164, 165 (1st Cir.1999); *United States v. Gonzalez–Vazquez,* 34 F.3d 19, 22 (1st Cir.1994).

This maxim has particular force in the case at hand. The Agreement made three things crystal clear: that the sentencing decision rested in the discretion of the district court, that safety valve eligibility might well influence that decision, and that whether or not the appellant was eligible for the safety valve remained an open question. Given these three things, it is surpassingly difficult for the appellant to argue convincingly that the denial of the safety valve reduction somehow constitutes a fair and just reason for allowing him, after the fact, to withdraw his guilty plea.

The appellant strives to blunt the force of this reasoning by pointing to statements made at the change-of-plea hearing. These statements, he suggests, comprised "promises," and their non-fulfillment rendered his plea involuntary under Fed. R.Crim.P. 11(b)(2). This suggestion elevates hope over reason.

During the change-of-plea colloquy, the magistrate judge systematically addressed every requirement of Rule 11. The magistrate judge supportably found that the appellant was competent, that he was adequately represented, and that he understood the charge, the Agreement, the impact of the sentencing guidelines, and the existence of the statute providing for a minimum 120–month sentence. The magistrate judge also secured the appellant's flat assurance that no promises, apart from those contained in the Agreement, had influenced his decision to plead guilty.

The appellant's responses to the magistrate judge's questions bear witness to the voluntariness of the plea. He acknowledged his awareness that the district judge could impose a harsher sentence than the government was recommending and that such a sentencing determination, if it came to pass, would not be a valid basis for a withdrawal of his plea. He also vouchsafed his understanding of the requirements for safety valve eligibility and acknowledged that a failure to meet those

requirements would subject him to the mandatory minimum sentence.

Viewed in this light, it is readily apparent that the fault—if there was one—lies not with what others said but with the appellant himself. For whatever reason, he was not forthcoming when the magistrate judge questioned him directly about his criminal history.[1] Given that lack of candor, the charge that the magistrate judge "misled" the appellant rings hollow.

We also reject the appellant's related argument that his former attorney's statement regarding his criminal history misled him. The attorney's statement that the appellant had no prior criminal record, quoted *supra*, was a response to a query from the bench, not a "promise" directed at the appellant.[2] Moreover, that statement can logically be read as mirroring the facts then known to the attorney. That is important because, as we said in an analogous situation, "the appellant was in a far better position [than the attorney] . . . to supply the missing integer in the sentencing equation: his prior criminal record." *Torres–Rosa*, 209 F.3d at 10. Given the appellant's failure to correct the apparent misstatement and come forward with the information that he undeniably possessed, he cannot now blame the dashing of his hopes for a lower sentence on his attorney. *See id.*

The PSI Report further undermines the appellant's argument. Whatever confusion may have existed prior to the issuance of the PSI Report, that report made pellucid that, at a bare minimum, the appellant would receive a 120–month mandatory minimum sentence. Notwithstanding this looming reality, the appellant neither interposed an objection to the PSI Report nor protested the denial of the safety valve reduction during his disposition hearing. This sequence of events tends to discredit the appellant's asseveration that his plea was involuntary. *See, e.g., Gonzalez–Vazquez*, 34 F.3d at 23 (explaining that undue delay in asserting supposed ground for plea withdrawal may undercut the request); *United States v. Parrilla–Tirado*, 22 F.3d 368, 373 (1st Cir.1994) (similar).

If more were needed—and we do not think that it is—we note that the appellant has not asserted a claim of innocence (nor could he reasonably do so, considering his red-handed arrest). The absence of a claim of innocence counsels against allowing a guilty plea to be withdrawn. *Torres–Rosa*, 209 F.3d at 9; *Gonzalez–Vazquez*, 34 F.3d at 23.

To say more on this issue would be to paint the lily. For the reasons elucidated above, we conclude, without serious question, that the record contains no hint of error, plain or otherwise, such as would incline us to set aside the appellant's guilty plea.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

■ The appellant's second claim of error is that he was denied the effective

---

1. Although the record contains no definitive explanation as to why the appellant failed to mention his prior conviction, we regard one possibility as foreclosed: here, as in *Torres–Rosa*, 209 F.3d at 9, "it is simply not plausible that he somehow 'forgot' his [prior] conviction[ ]."

2. The government posits that the only plausible explanation for the attorney's statement is that the appellant chose to conceal his prior conviction from his counsel. If this were so, it would doom the appellant's quest. *See United States v. Colón–Torres*, 382 F.3d 76, 86 (1st Cir.2004) ("Clients should answer truthfully their attorney's inquiries about their past convictions, and lawyers are entitled to rely reasonably on the explicit representations of clients about their criminal histories."). Here, however, the record is simply too scant to permit us to reconstruct what the appellant may or may not have told his former counsel.

assistance of counsel because his former attorney did not conduct an independent investigation into his criminal record prior to the change-of-plea hearing. This claim need not occupy us for long.

This court repeatedly has held that fact-specific claims of ineffective assistance of counsel, not raised below, cannot ordinarily be advanced for the first time on direct appeal, but, rather, must be instigated through a post-conviction petition under 28 U.S.C. § 2255. *See, e.g., United States v. Vega Molina,* 407 F.3d 511, 530 (1st Cir. 2005); *United States v. Mala,* 7 F.3d 1058, 1063 (1st Cir.1993). The rationale behind this rule is that ineffective assistance of counsel claims normally require fact-specific inquiries that an appellate court, without a developed record, is ill-equipped to undertake. *Mala,* 7 F.3d at 1063. While exceptions have been made when "the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of [the] ineffective assistance claim," *United States v. Natanel,* 938 F.2d 302, 309 (1st Cir.1991), the record in this case fails to satisfy the necessary criteria.

The appellant admits that the record is uninformative as to the contents of any communications (oral or written) between him and his former counsel regarding his past criminal activities. These communications (or the lack of any, if that proves to be the case) will bear heavily on the appellant's claim. Without any reliable insight into what may or may not have transpired, attempting to evaluate the effectiveness vel non of counsel's performance would be a game of blind man's buff. *See United States v. Martins,* 413 F.3d 139, 155 (1st Cir.2005) (explaining that a fact-specific inquiry, undertaken without knowledge of the exchanges between client and counsel, would be "inherently speculative"). We hold, therefore, that this claim is premature.

## IV. CONCLUSION

We need go no further. Because the record reveals no valid ground for vacating the appellant's guilty plea, we affirm his conviction and sentence. At the same time, we dismiss his ineffective assistance of counsel claim, without prejudice, however, to that claim being brought, should the appellant so desire, in a subsequent proceeding under 28 U.S.C. § 2255.

*So Ordered.*