**Lois WEST, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A.01–1423–WEB.**

United States District Court, D. Kansas.

Jan. 22, 2003.

John L. Brennan, Brennan & Keil, Wichita, KS, for plaintiff.

Emily B. Metzger, Office of U.S. Atty., Wichita, KS, for defendant.

### ORDER ADOPTING RECOMMENDATION AND REPORT

WESLEY E. BROWN, Senior District Judge.

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter was referred to Magistrate Judge Reid for a report and recommendation pursuant to Rule 72(b), Federal Rules of Civil Procedure.

The magistrate judge has recommended that the decision of the Commissioner be affirmed.

The recommendation was filed on January 2, 2003. No written objections to this report have been filed by either party in the case.

Accordingly,

IT IS ORDERED that the recommendation and report of the magistrate judge (Dkt.15) be, and it is hereby adopted by this court; and

IT IS FURTHER ORDERED that the decision of the Commissioner be AFFIRMED.

### RECOMMENDATION AND REPORT

REID, United States Magistrate Judge.

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) under § 205(g) of the Social Security Act (hereinafter the Act) denying disability insurance benefits. 42 U.S.C. § 405(g). The matter has been referred to this court for a recommendation and report. The court recommends the decision of the Commissioner be affirmed.

### I. Background

Plaintiff filed an application for disability insurance benefits on January 22, 1999. (R. 13, 81). Plaintiff's application was denied initially and upon reconsideration by the agency. (R. 13, 47, 53). Plaintiff requested and on March 23, 2000, received a hearing before an Administrative Law Judge (hereinafter ALJ). (R. 13). In a decision issued June 19, 2000, the ALJ denied plaintiff's application for disability insurance benefits. (R. 13–28). The ALJ's findings include the following:

3. The medical evidence establishes that, in combination, the claimant's fibromyalgia, degenerative disc disease in the lumbar spine and knees, and status/post meniscectomy are severe impairments, but do not either singly or in combination meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. The claimant has non-severe carpal tunnel syndrome and depressive disorder.

. . . . .

5. The claimant retains the residual functional capacity to engage in work at the sedentary exertional level, or work which requires lifting or carrying up to 20 pounds occasionally, but 5 pounds or less frequently, sitting up to 6 hours of an 8 hour day, and standing or walking up to 3 to 4 hours of an 8 hour day.

6. The claimant has non-exertional limitations which restrict her from more than occasional bending, stooping,

kneeling, crouching, or crawling. The claimant should avoid continuous or repetitive handling. (R. 24–25). Based upon his findings, the ALJ determined at step four of the sequential evaluation process that plaintiff is able to perform her past relevant work, and is not, therefore, under a disability as defined in the Act. (R. 24–25).

Plaintiff requested review by the Appeals Council. (R. 9). The Appeals Council received additional evidence from plaintiff and issued an order making that evidence a part of the record. (R. 8). The Appeals Council denied plaintiff's request for review, finding no basis, in either the regulations or the additional evidence received, upon which to change the decision of the ALJ. (R. 6–7). The ALJ decision stands as the final decision of the Commissioner. *Id.; see also, Clifton v. Chater,* 79 F.3d 1007, 1008 (10th Cir.1996). Plaintiff timely filed this action seeking review of the Commissioner's decision.

## II. Legal Standard

■ Final decisions of the Commissioner shall be subject to judicial review. 42 U.S.C. § 405(g). Section 405(g) of the Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The court shall review the Commissioner's decision to determine only whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir.1994); *Marshall v. Chater,* 75 F.3d 1421, 1425 (10th Cir.1996). Substantial evidence is more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Gossett v. Bowen,* 862 F.2d 802, 804 (10th Cir.1988). The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Id.* at 804–05; *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan,* 794 F.Supp. 1045, 1047 (D.Kan.1992). The court shall examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the decision is supported by substantial evidence in the record. *Glenn,* 21 F.3d at 984.

The Act provides that an individual shall be determined to be under a disability only if she can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of twelve months. Plaintiff's physical or mental impairment or impairments must be of such severity that she is not only unable to perform her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

Plaintiff has the burden of proving a disability that prevents her from engaging in her prior work activity. The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2001); *Ray,* 865 F.2d at 224; *Gossett,* 862 F.2d at 805. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation

under a subsequent step is not necessary." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988). In step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity at the time of the determination. *Id.* Step two considers whether the claimant has a medically severe impairment or combination of impairments which significantly limits her ability to do basic work activities. *Id.* at 750–51.

In step three, the Commissioner "determines whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.* at 751 (quoting *Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)). If the claimant has a listed impairment or its equivalent, she is conclusively presumed to be disabled and is entitled to benefits. *Id.* If not, the decisionmaker must continue to the fourth step— whether the claimant has shown that the impairment prevents her from performing work she has performed in the past. *Id.* If the claimant is able to perform work she has performed in the past, she is not disabled. *Id.* If not, the decision-maker must evaluate step five, whether the claimant has the residual functional capacity (hereinafter RFC) in light of her age, education, and work experience, to perform other work in the national economy. *Id.*

Only at step five does the burden shift to the Commissioner to show that the claimant retains the ability to do other work activity and that jobs the claimant could perform exist in the national economy. *Id.* The Commissioner meets her burden if the decision is supported by substantial evidence in the record viewed as a whole. *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir.1993); *Ray,* 865 F.2d at 224; *Gossett,* 862 F.2d at 805.

A claimant is placed in one of five RFC categories based on her capacity for work activity on a regular and continuing basis. *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984). A claimant must be able to perform the full range of such work on a daily basis and must possess physical capacities equal to the strength requirements for most of the jobs in that range in order to be placed in a particular RFC category. *Id.* at 579–80. A claimant is entitled to benefits if the Commissioner cannot establish that the claimant retains the capacity to perform alternative work activity and that this specific type of job exists in the national economy. *Williams,* 844 F.2d at 751.

## III. Discussion

Plaintiff's sole claim of error is that the ALJ "did not provide an adequate basis for adopting the opinions of non-examining medical experts over plaintiff's own treating medical providers." (Pl.Br.6). Specifically, plaintiff makes four arguments regarding the ALJ's analysis of medical opinion evidence. Plaintiff claims (1) that the ALJ gave the opinions of non-examining medical experts controlling weight over opinions of plaintiff's treating physicians; (2) that the ALJ did not provide a proper basis for rejecting the opinions of Dr. Lee, plaintiff's family physician; (3) that the evidence does not support the ALJ's decision to reject the opinion of Dr. Jones, plaintiff's orthopedist, that plaintiff can sit less than one hour throughout an eight-hour workday; and (4) that the opinions of Dr. Lee and Dr. Jones are substantially the same and are not inconsistent in such a manner that they tend to discredit each other. The Commissioner, in her brief, argues that the ALJ properly considered the opinions of medical sources and gave sufficient reasons, supported by substantial evidence, for rejecting certain opinions of

plaintiff's treating physicians. The court will address each claim.

## A. Standard for Weighing Medical Opinion Evidence

▮ Every medical source opinion, whether held by a treating source, an examining source, or a non-examining source, will be evaluated by the Commissioner in accordance with factors contained in the regulations. 20 C.F.R. §§ 404.1527(d), 416.927(d); *Soc. Sec. Rul.* 96–5p, 1996 WL 374183, at *3. "If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of **the nature and severity of [the claimant's] impairment(s)** is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2) (emphasis added). In harmony with the regulations, the Tenth Circuit has held that an ALJ must give controlling weight to a treating source's opinion concerning the nature and severity of plaintiff's impairments if the opinion "is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir.1995) (quoting *Castellano v. Sec'y of Health & Human Serv.*, 26 F.3d 1027, 1029 (10th Cir.1994)).

A treating source's opinion must be given substantial weight unless good cause is shown to disregard it. *Goatcher v. Dep't of Health & Human Serv.*, 52 F.3d 288, 289–90 (10th Cir.1995). A treating source opinion is given such weight because it "reflects expert judgment based on continuing observation of a claimant's condition over a prolonged period of time." *Williams v. Chater*, 923 F.Supp. 1373, 1379 (D.Kan.1996).

▮ If a treating source's medical opinion is not given controlling weight, it will be evaluated in accordance with the factors provided for evaluating all medical source opinions. 20 C.F.R. § 404.1527(d)(2). Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at § 404.1527(d)(2–6); *Goatcher*, 52 F.3d at 290.

When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around." *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988). The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled. *Frey*, 816 F.2d at 513. *Goatcher*, 52 F.3d at 289–90.

▮ Findings on certain issues that are dispositive of the case, such as opinions regarding: **plaintiff's RFC**; whether an impairment meets or equals a listing; whether a plaintiff can do past relevant work; how age, education, and work experience apply in a particular case; and whether a plaintiff is disabled, are reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2 & 3); *Soc. Sec. Rul.* 96–5p, 1996 WL 374183, at *2; *Soc. Sec. Rul.* 96–8p, 1996 WL 374184, at *8, n. 8. Determination of issues reserved to the Com-

missioner will **not** be given any **special significance or controlling weight**. *Id.* A treating physician's opinion of an issue reserved to the Commissioner, such as disability, is not controlling because determining the ultimate issue is the responsibility of the Commissioner. *Castellano,* 26 F.3d at 1029 (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)). However, even on issues reserved to the Commissioner, the decision must explain the consideration given to treating source opinions regarding the nature and severity of the claimant's impairment(s). 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Soc. Sec. Rul.* 96–5p, 1996 WL 374183, at *8. Where the ALJ's RFC determination conflicts with a medical source opinion, the ALJ must explain why he did not adopt the medical source opinion. *Soc. Sec. Rul.* 96–8p, 1996 WL 374184, at *7.

Courts in this jurisdiction have acknowledged various reasons for rejecting a treating source opinion. *James v. Dep't of Health & Human Serv.,* No. 94–6124, 1995 WL 65454, at *2 (10th Cir. Feb.17, 1995) (office records do not support the conclusion); *Castellano,* 26 F.3d at 1029 (not supported by specific findings); *Hargis v. Sullivan,* 945 F.2d 1482, 1489–90 (10th Cir. 1991) (ALJ gives specific, legitimate reasons); *Murphy v. Callahan,* No. 96–4084–SAC, 1997 WL 263739, at *5 (D.Kan. Apr.28, 1997) (physician's records reflect only plaintiff's subjective beliefs); *Douglas v. Chater,* No. 94–2330, 1996 WL 42131, at *3 (D.Kan. Jan.29, 1996) (treatment records do not support the conclusion).

## B. The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that plaintiff has severe impairments of fibromyalgia, degenerative disc disease of the lumbar spine and knees,[1] and status/post meniscectomy. (R. 17). The ALJ found that plaintiff has the following impairments which are not severe: bilateral carpal tunnel syndrome, colon resection, irritable bowel syndrome, pes planus in the heel, and hypertension. (R. 17–18). Although the ALJ found that plaintiff's bilateral carpal tunnel syndrome is not severe, he incorporated restrictions relating to this impairment into his RFC finding. (R. 18). Plaintiff does not claim error in any of these step two findings.

Regarding plaintiff's mental impairments, the ALJ noted at step two that plaintiff takes antidepressant medication, partly as treatment for fibromyalgia symptoms; that plaintiff has never sought counseling or therapy for depression; and that plaintiff experiences no more than minimal functional limitations from her mental impairments. (R. 19). The ALJ then made his finding:

> The undersigned adopts the opinion of examining psychologist Dr. Simmonds (exhibit B7F/61 [ (R. 223) ]) and the non-examining State agency medical consultants (exhibit B8F [ (R. 226–35) ]) that the claimant does not have a severe mental impairment which would restrict her capacity for simple work activity. Although neither source have [sic] treated the claimant, both medical sources have based their opinions upon medically acceptable diagnostic methods as well as the claimant's statements and her daily activities. Thus, these opinions are entitled to substantial weight.

(R. 19).

The ALJ determined at step three that none of plaintiff's impairments, either singly or in combination, meets or equals the severity of an impairment listed in the regulations. (R. 20). The ALJ began his

---

**1.** Plaintiff does not allege error in this finding, and the court presumes the ALJ intended a finding of degenerative disc disease of the lumbar spine and degenerative joint disease of the knees. (R. 14–15 (degenerative changes in the knees)).

step four analysis of plaintiff's RFC by determining that plaintiff's statements that her symptoms were of disabling severity are not credible. (R. 20–22). Plaintiff does not challenge the step three finding nor the credibility finding.

The ALJ reached the following conclusion regarding plaintiff's RFC:

> The undersigned finds that the claimant's back and knee pain and fibromyalgia limits her to work which requires lifting or carrying up to 20 pounds occasionally, but only 5 pounds or less frequently, sitting up to 6 hours of an 8 hour day, and standing or walking up to 3 to 4 hours of an 8 hour day. The claimant can thus perform the exertional demands of sedentary work (20 C.F.R. § 404.1567). Ms. West's capacity for sedentary work is diminished by non-exertional limitations which restrict her from more than occasional bending, stooping, kneeling, crouching, or crawling. As a result of carpal tunnel syndrome, the claimant should avoid continuous or repetitive bimanual handling.
>
> . . . . .
>
> In reaching this conclusion, the undersigned has considered and afforded substantial weight to the opinions of the State agency medical consultants regarding the claimant's abilities to do work-related activities (exhibit B9F [ (R. 236–43) ]). Although the State agency medical consultants did not examine the claimant, they provided specific reasons for their opinions about the claimant's residual functional capacity showing that these opinions were grounded in the evidence of record, including careful consideration of treating and examining physician and psychologist opinions and the claimant's allegations about her symptoms and limitations. However, the undersigned finds that the claimant's testimony regarding inability to lift on a repetitive basis is supported by nerve

conduction studies documenting bilateral carpal tunnel syndrome, and has incorporated this into the residual functional capacity (20 CFR 404.1527(d) and (f); Social Security Rulings 96–2p, 96–6p, 96–8p.)

(R. 22).

The ALJ noted that plaintiff's family physician, Dr. Rex Lee, completed a Medical Source Statement in which he stated that plaintiff cannot lift over five pounds, cannot sit even one hour a day, cannot stand or walk even one hour a day, must lie down for fifteen minutes every one to two hours, and has marked or moderate work-related limitations. (R. 22 (citing exhibit B11F/108–111 (R. 265–68))). In rejecting Dr. Lee's opinions, the ALJ gave numerous reasons: (1) Dr. Lee's treatment notes primarily document plaintiff's subjective complaints; (2) the treatment notes show few objective findings; (3) Dr. Lee reported that plaintiff "had no sensory deficits, atrophy, or other abnormalities," (R. 23 (citing R. 181)); (4) Dr. Lee reported that plaintiff had normal gait and station; (5) Dr. Lee indicated he believed plaintiff is disabled because of excessive absenteeism for medical office visits; (6) Dr. Lee is not a psychologist or psychiatrist; (7) the reports of the consultant psychologist and the state agency physicians regarding plaintiff's mental impairments outweigh that of Dr. Lee because (a) Dr. Simmonds, the examining consultant, is a psychologist, and Drs. Schloesser and Warrender, the state agency physicians, are psychiatrists; (b) those doctors used acceptable diagnostic techniques; and (c) the reports and the opinions contained therein are consistent with plaintiff's statements and plaintiff's daily activities; (8) Dr. Lee's opinion regarding plaintiff's limited exertional capacity is inconsistent with his report that plaintiff has normal gait and station with no sensory deficits; (9) Dr. Lee's tests indicate normal lower ex-

tremity arterial flow, minimal osteophyte formation in the cervical spine, and normal abdomen; and (10) Dr. Lee's opinion appears to be based almost entirely on plaintiff's subjective statements—which the ALJ found to be not credible.

After rejecting Dr. Lee's opinions, the ALJ discussed the Medical Source Statement provided by Dr. Jay Stanley Jones, plaintiff's orthopedic surgeon. The ALJ adopted Dr. Jones's findings regarding plaintiff's capacity for lifting,[2] standing, and walking, but rejected Dr. Jones's determination that plaintiff is unable to sit longer than one hour in a day. (R. 23 (citing exhibit B12F (R. 275–82))). Explaining the weight given to Dr. Jones's assessment, the ALJ noted: (1) Dr. Jones stated his opinion that plaintiff does not need to lie down for pain relief during the daytime; (2) there are no objective findings in Dr. Jones's treatment notes that suggest that plaintiff cannot sit for longer than one hour in a day; and (3) Dr. Jones's notes do not document an impairment which would significantly restrict plaintiff's capacity for sitting. (R. 23). As a final justification for discounting the opinions of plaintiff's treating physicians, the ALJ explained, "[t]he wide variance in [the physician's assessments] as well as the lack of objective evidence to support either assessment in [its] entirety is a basis to discredit parts of Dr. Jones' recommendations and most of Dr. Lee's opinions." *Id.*

### C. Analysis

■ As a preliminary matter, the court notes that plaintiff's arguments imply that the treating source opinions at issue are opinions regarding the nature and severity of plaintiff's impairments which were rejected by the ALJ without consideration. The court does not agree. The ALJ clearly accepted the records and opinions of Drs. Lee and Jones regarding the nature of plaintiff's impairments and found that plaintiff has impairments of fibromyalgia, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees, status/post meniscectomy, bilateral carpal tunnel syndrome, colon resection, irritable bowel syndrome, pes planus in the heel, hypertension, and depression. The court finds that the opinions rejected by the ALJ were statements provided by treating physicians regarding plaintiff's capacities for work and constitute assessments of plaintiff's RFC—an issue reserved to the ALJ. Such assessment may not be given controlling weight or any special significance over other medical evidence. *Brown v. Apfel,* No. 99–2355, 2000 WL 1451019, *1 (1st Cir. Sept.28, 2000); *Poland v. Halter,* No. CIV. 00–350–B, 2001 WL 920038, *6 (D.N.H. Aug.2, 2001); *Gallant v. Apfel,* No. 98–407–P–H, 1999 WL 33117180, *3 (D.Me. May 12, 1999); 20 C.F.R. § 404.1527(e)(2 & 3). The opinions at issue, as assessments of plaintiff's capacity for work, necessarily reveal something of the physicians' opinions regarding the severity of plaintiff's impairments and must be considered by the ALJ in his decision, but may not be given special significance.

### 1. The Opinions of Non-examining Medical Experts Were Not Given Controlling Weight

The court rejects plaintiff's claim that the ALJ gave the opinions of non-examin-

---

**2.** As plaintiff notes, Dr. Jones's statement indicates plaintiff can lift twenty pounds frequently but only five pounds occasionally. (R. 276). Those statements taken together are illogical, and, at the hearing, the ALJ indicated that he understood Dr. Jones to mean five pounds frequently and twenty

pounds occasionally. (R. 340). The ALJ's interpretation is reasonable, plaintiff did not object to that interpretation at the hearing, and plaintiff does not now argue that the ALJ's interpretation is erroneous or unreasonable. Therefore, the court accepts the ALJ's interpretation of Dr. Jones's statement.

ing medical experts controlling weight over that of plaintiff's treating physicians. Dr. Simmonds is a psychologist who examined plaintiff and as such cannot be considered a non-examining medical expert.

Moreover, although the ALJ ultimately agreed with the opinions of Dr. Simmonds and the agency non-examining physicians, he did not give those opinions controlling weight. Rather, the ALJ determined that the opinions of Drs. Lee and Jones would not be given controlling weight because they are inconsistent with other substantial evidence in the record such as: evidence of plaintiff's daily activities, the doctors' own treatment notes, the opinions of the agency examining and non-examining physicians, and evidence that each treating physician's opinion is at variance with the opinion of the other treating physician. (R. 22–23).

■ Therefore, the treating source opinions were not given controlling weight but were weighed in accordance with the regulatory factors for weighing all medical source opinions. In his analysis, the ALJ gave "substantial weight" to the opinions of the state agency non-examining physicians but also rejected those opinions to the extent he found plaintiff's bilateral carpal tunnel syndrome imposes greater limitations than agency physicians believed. (R. 22). The ALJ did not give controlling weight to the opinions of any physician or group of physicians.

## 2. The ALJ Did Not Err by Rejecting the Opinions of Plaintiff's Family Physician

Plaintiff claims error in the ALJ's decision to reject the opinions of Dr. Lee regarding plaintiff's capacity for work. Yet, the ALJ gave eleven reasons for rejecting Dr. Lee's opinion of plaintiff's capacities for work. With regard to the ALJ's assertion that Dr. Lee's treatment notes primarily document claimant's sub-

jective complaints and show few objective findings, plaintiff argues that all doctors' treatment notes reflect their patient's subjective complaints and that Dr. Lee's records contain many test results and lab results.

Plaintiff's argument misses the point of the ALJ's finding. Dr. Lee's treatment notes contain the physician's documentation of plaintiff's subjective complaints but do not contain any indication that the physician followed up with objective testing or clinical investigation to confirm the complaints. The test results to which plaintiff refers in her brief are routine blood tests (R. 185–86, 190–91, 269, 274), urine tests (R. 187, 272), and a normal Pap smear (R. 183). These tests do nothing to confirm either the complaints of the plaintiff or the opinions of Dr. Lee. As the ALJ stated, the few tests ordered by the physician which are relevant to plaintiff's allegations of disability are essentially normal. (R. 258 (normal abdomen)); (R. 260 (negative cervical spine with minimal osteophyte formation)); (R. 262 (normal bilateral lower extremity arterial sonogram)). In essence, the ALJ found that Dr. Lee's opinions are conclusory opinions based primarily on plaintiff's subjective complaints without support in his treatment notes. That finding is supported by substantial evidence in the record. Nonetheless, Dr. Lee provided a statement of plaintiff's functional capacities which contains opinions and findings not supported by the treatment notes and which, in fact, seems to contradict statements he made in a letter to the disability determination service that plaintiff's gait and station "is usually within normal limits, she has no clonus, rigidity, tremor, atrophy or sensory deficit." (R. 181).

Plaintiff next argues that this statement of Dr. Lee is insufficient for the ALJ to determine what capacity plaintiff has for

standing or walking during an eight hour workday. Further, plaintiff points to evidence of plaintiff's knee problems, arthritis, meniscus tears, recurring pain and swelling, and of her testimony regarding her limitations in an apparent attempt to imply that her capacity is as Dr. Lee asserts. The ALJ acknowledged the evidence regarding plaintiff's physical impairments and did not mischaracterize that evidence. The ALJ considered the evidence of plaintiff's impairments and determined that Dr. Lee's treatment notes do not support the limitations asserted in the Medical Source Statement. The mere fact that plaintiff has the impairments listed does not in itself imply that plaintiff's RFC is as limited as Dr. Lee opines.

Moreover, plaintiff's argument in this regard highlights the problem with the treatment notes. Dr. Lee wrote that plaintiff's station and gait are "usually within normal limits, she has no clonus, rigidity, tremor, atrophy or sensory deficit." (R. 181). Nowhere in the treatment notes is there any statement or direct indication with regard to plaintiff's capacity for standing or walking. Nonetheless, in his Medical Source Statement, Dr. Lee stated a conclusory opinion that plaintiff can stand or walk for less than fifteen minutes without a break and for less than one hour in an eight hour workday. Plaintiff's testimony that her symptoms are of disabling severity was found to be incredible, and plaintiff does not challenge that finding. Therefore, plaintiff's support for Dr. Lee's opinion based upon her testimony is unavailing. The fact that the treatment records do not support the physician's opinion is a legitimate reason to discount Dr. Lee's opinion regarding plaintiff's RFC.

Plaintiff claims error in discounting Dr. Lee's opinions of plaintiff's mental impairment. Plaintiff argues that these opinions were discounted only because Dr. Lee is not a specialist and that this is improper because Dr. Lee is a trained medical doctor who has been caring for plaintiff's depression for several years. While it is correct that Dr. Lee is qualified to treat plaintiff for depression and that Dr. Lee is familiar with plaintiff's impairments, it is incorrect to assert that Dr. Lee's opinions regarding plaintiff's mental impairment were discounted merely because Dr. Lee is not a specialist.

That Dr. Lee is not a specialist is one factor legitimately relied upon in rejecting Dr. Lee's opinions regarding plaintiff's mental impairment. Moreover, the ALJ also considered that Drs. Simmonds, Schloesser, and Warrender are specialists in mental impairments, that they used medically acceptable diagnostic techniques, and that they based their opinions on plaintiff's statements and daily activities. (R. 19). Viewed in context, the ALJ's statement indicates another reason he rejected Dr. Lee's opinions—the opinions of the agency medical sources are more consistent with plaintiff's daily activities than are Dr. Lee's opinions. The ALJ examined the other doctors' opinions and determined they outweighed those of Dr. Lee.

██ Considering the record in this case, the ALJ articulated numerous reasons to discount the work assessment opinions of Dr. Lee, and those reasons are legitimate, specific reasons supported by substantial evidence in the record. Therefore, the court finds that the ALJ did not err by discounting the opinions of Dr. Lee.

3. **The ALJ Did not Err by Discounting the Opinion that Plaintiff Can Sit for Less than One Hour Throughout an Eight–Hour Workday**

The ALJ adopted Dr. Jones's opinions regarding plaintiff's capacity for lifting, standing, and walking, and his opinion that

plaintiff does not need to lie down for pain relief during the daytime, but rejected the doctor's opinion that plaintiff can sit for less than one hour total throughout an eight-hour workday. The ALJ rejected that opinion because he found that it is not supported by objective findings and because he found that Dr. Jones's records do not document any impairment which would significantly restrict plaintiff's capacity for sitting. Plaintiff argues that the ALJ erred because he cites no medical evidence directly stating that Dr. Jones had not documented such an impairment and because plaintiff testified that she cannot sit for more than thirty minutes without feeling "like the blood starts cutting off right at my knees and they start aching real bad." (Pl. Br. at 10) (without citation but quoting (R. 325)).

 The court has reviewed Dr. Jones's treatment notes and finds no mention that plaintiff is limited in her capacity for sitting, and no mention of an impairment which would obviously limit plaintiff's capacity for sitting. A medical opinion must be based upon the physician's treatment record and observations of the plaintiff, yet Dr. Jones's notes do not contain any indication that plaintiff's capacity for sitting is limited. Moreover, Dr. Jones found that plaintiff does not need to lie down for pain relief during the day. While the ALJ is not permitted to form his own medical opinion, he is not required to accept a treating physician's opinion which is not supported by the physician's own records. Here, the agency physicians opined that plaintiff is not significantly limited in her capacity for sitting. (R. 237). The ALJ is permitted to adopt that opinion. Because the ALJ determined plaintiff's testimony is not credible and plaintiff does not challenge that finding, plaintiff's testimony that her sitting capacity is severely limited is not sufficient to negate the ALJ's RFC finding. The ALJ articulated legitimate, specific reasons to discount Dr.

Jones's opinion that plaintiff may only sit for less than one hour throughout the day. Those reasons are supported by substantial evidence in the record. Therefore, the court finds that the ALJ properly discounted that opinion.

Based upon his determination that the treatment records of the physicians do not support the opinions at issue, the ALJ discounted the opinions contained in Dr. Lee's Medical Source Statement and Dr. Jones's opinion regarding plaintiff's capacity for sitting. It might be argued, therefore, that the ALJ should have sought clarification of the opinions and records at issue from each of the physicians. In fact, that is precisely what the ALJ did in this case. The ALJ sent interrogatories to each physician. In the interrogatories, the ALJ first asked if the physician used information other than his office records in completing the Medical Source Statement at issue and, if so, requested the physician to provide a copy of that information. In the second question, the ALJ asked if there were findings of significant physical or emotional impairment upon which the Medical Source Statement limitations were based and, if so, where the documentation might be found. (R. 284, 287).

Each physician indicated that his Medical Source Statement was based solely upon his office records. *Id.* In response to the second question, Dr. Lee stated that his opinion was based upon impairments of "hx of Anxiety, Depression [nearly illegible], & fibromyalgia." (R. 287). Dr. Jones indicated that his opinion was based upon significant impairments documented in his "medical records." (R. 284). The ALJ provided copies of the completed interrogatories to plaintiff with a notice of her right to respond with additional evidence, submit questions for the physicians, seek a supplemental hearing, and subpoena witnesses and records. Plaintiff did not seek any further action. (R. 288–94). In this

case, the ALJ sought clarification from the physicians regarding whether their opinions had a basis not evident in their treatment records. Each physician responded that the treatment records were the sole basis for his opinions. Therefore, the ALJ did not err by discounting the opinions for which he found insufficient support in the treatment records.

### 4. Differences Between the Opinions of Plaintiff's Treating Physicians Is One Factor Supporting the ALJ's Decision to Discount Portions of the Opinions.

The ALJ found that the "wide variance" between the statements of Drs. Lee and Jones and the lack of objective evidence to support either assessment is another basis to discount part of Dr. Jones's assessment and most of Dr. Lee's assessment. (R. 23). Plaintiff argues that the opinions of the two physicians are "substantially the same," are consistent with regard to plaintiff's alleged inability to complete an eight-hour workday, and are not inconsistent in a manner such that one would discredit the other. The court agrees that the ALJ's use of the term "wide variance" is an overstatement. However, use of hyperbole, by itself, does not constitute error in the decision reached. The court finds that there are differences between the opinions sufficient to constitute an additional, albeit minor, factor in support of the ALJ's decision to discount the opinions.

One would expect similarities in separate assessments where both physicians had regularly treated a patient for a period of years. That is the case here. Therefore, the court discusses only the differences in the physicians' assessments. Dr. Lee is of the opinion that plaintiff can lift less than five pounds even on an occasional basis whereas Dr. Jones opines that plaintiff can lift up to twenty pounds occasionally. Dr. Lee states that plaintiff can stand or walk for only fifteen minutes at a time, but Dr. Jones says she can stand or walk for up to two hours at a time. Dr. Lee states that plaintiff can sit only fifteen minutes continuously, but Dr. Jones says she can sit thirty minutes continuously. According to Dr. Lee, plaintiff must lie down for fifteen minutes every one to two hours for pain relief, but Dr. Jones says she has no need to lie down for pain relief during the work day. Finally, Dr. Lee says plaintiff's medications cause drowsiness for the plaintiff, but Dr. Jones says plaintiff has no work limitations resulting from her medication. (R. 265–66, 276–77). Comparing the two physicians' assessments, it appears that Dr. Jones's opinion credits plaintiff with approximately twice the capacity with which Dr. Lee credits her. That is a small, but significant, difference. With regard to lifting, carrying, standing, walking, and pain control, it is the difference between having the RFC for work and not having the RFC for work. Such a difference is a factor upon which the ALJ may rely in determining whether to discount the opinions of the physicians involved. It is especially appropriate to consider that factor here, where the ALJ has articulated numerous other reasons to discount portions of the opinions at issue and where the ALJ offered the physicians an opportunity to clarify the basis of the opinions at issue.

The court has considered each argument made by plaintiff in her claim that the ALJ erred in discounting the RFC opinions of plaintiff's treating physicians. For the reasons discussed herein, the court finds that the ALJ has stated specific, legitimate reasons for discounting portions of the treating physicians' opinions. The court's review of the record reveals substantial evidence in the record viewed as a whole supports the ALJ's determination.

There is evidence in the record from which the ALJ could have concluded that plaintiff is disabled. The ALJ, however, is

the finder of fact in these cases. The court is not to reweigh the evidence where the record as a whole supports the ALJ's conclusion. Although the court might weigh the evidence differently than the ALJ, the evidence does not point but one way, and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989) (quoting *Consolo v. Fed. Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)).

**IT IS THEREFORE RECOMMENDED** that judgment be entered AFFIRMING the decision of the ALJ.

Copies of this recommendation and report shall be mailed to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy.

Jan. 2, 2003