Ileri v. SSA                         CV-03-107-JD  12/01/03

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Salih Bora Ileri

      v.                                Civil No. 03-107-JD
                                        Opinion No. 2003 DNH 205
Jo Anne B. Barnhart, Commissioner


O R D E R


The plaintiff, Salih Bora Ileri, seeks judicial review, pursuant to 28 U.S.C. § 405(g), of the decision of the Commissioner denying his application for social security benefits.  Ileri contends that the Administrative Law Judge ("ALJ") failed to give controlling weight to the opinions of his treating psychiatrist, erroneously substituted his own opinions for those in the record, improperly considered a medical report while ignoring its spirit, and improperly relied on Ileri's daily activities.  Ileri also asks that his case be remanded for further administrative proceedings to consider new medical evidence.  The Commissioner moves to affirm the decision.


Background

Salih Bora Ileri applied for benefits under Titles II and XVI of the Social Security Act, alleging an inability to work due to disability since October 25, 1999.  Ileri has a Master of Business Administration degree, and he has worked as a plant

supervisor, a foreman, an engineer, an assembler supervisor, a night auditor, a production planner, an inventory supervisor, a hotel clerk, and a driver. He will remain insured through at least December 31, 2003.

Ileri consulted with Dr. David J. Schopick, a psychiatrist, on November 23, 1998, due to a concern that he had developed attention deficit hyperactivity disorder ("ADHD"). He complained of poor concentration and reading comprehension. Dr. Schopick heard Ileri's description of his symptoms, his past history, and his living circumstances, including a painful divorce and the loss of his job resulting in a decline in living status. Dr. Schopick noted that Ileri's mood was a little depressed with a sad affect but that he was able to laugh genuinely and that his judgment and insight appeared to be good. Dr. Schopick diagnosed ADHD and major depression with atypical features. He also concluded that Ileri was functioning at a Global Assessment of Functioning ("GAF") level of 75, which indicates only slight impairment.

Dr. Schopick prescribed a regimen of psycotherapeutic medications beginning in December of 1998. Dr. Schopick's treatment notes during 1999 indicate that Ileri was doing well, that work was going well, and then, even after being laid off, he continued to do well. On March 14, 2001, Dr. Schopick wrote that

Ileri was discouraged because his driver's license had been suspended for not paying child support.

On the same day, March 14, Dr. Schopick completed a report for New Hampshire Disability Determination Services ("DDS") in which he noted that Ileri was continuing to experience major depression and that ADHD limited his ability to perform activities of daily living, to socialize, and to react appropriately to stress. At the same time, Dr. Schopick reported that Ileri had a normal rate of speech, normal thought content, and normal functioning in orientation, memory, learning, attention, and concentration. In a mental impairment questionnaire, also completed on March 14, 2001, however, Dr. Schopick indicated that Ileri was experiencing poor memory, sleep and mood disturbance, emotional lability, social withdrawal, a flat affect, decreased energy, anhedonia, psychomotor agitation, feelings of guilt and worthlessness, difficulty concentrating, and persistent general anxiety. He found marked restrictions in Ileri's activities of daily living and social functioning; frequent deficiencies in concentration, persistence, and pace; and repeated episodes of deterioration or decompensation in a work setting.

Dr. Schopick's treatment notes in April, May, and June of 2001 report continuing symptoms of ADHD and depression. In July,

3

Ileri reported that he was not sitting around crying. Dr. Schopick described Ileri as sad but strong and communicative.

In July of 2001, Ileri was also examined by Steven B. Spielman, Ph.D., a clinical neuropsychologist. Ileri described his typical activities as including housework tasks, grocery shopping, socializing with friends, and going to a local café. He denied any current problems or complaints and reported that his sleep had improved and that his appetite was good. Dr. Spielman found intact orientation, acceptable attention, and normal processing speed. Dr. Spielman diagnosed a major depressive disorder that was well controlled through medication. In his opinion, Ileri was capable of completing short tasks, to follow a schedule, and to interact with others appropriately. He thought Ileri would benefit from vocational rehabilitation.

Michael A. Schneider, Psy.D., a psychologist and medical consultant for DDS, reviewed Ileri's medical record for purposes of his application for benefits. Dr. Schneider indicated that Ileri's mental state had more than a minimal effect on his ability to perform basic work related functions, but that he did not suffer from any limitations which would meet or equal a category in the Social Security Listing of Impairments. He found that Ileri's mental capacity was moderately limited as to his ability to understand, remember, carry out detailed instructions,

4

respond to criticism from supervisors, and respond appropriately to changes in the work setting. In his opinion, Ileri was capable of performing simple, straight forward work activities.

On September 4, 2001, Dr. Schopick reported that a change of medications had helped and that Ileri was smiling and laughing appropriately at that appointment. Dr. Schopick wrote in his October 31, 2001, treatment note that Ileri had been very upset by the September 11 attack. He also reported that Ileri's medications were working, but he changed the medication regimen. In December of 2001, Dr. Schopick noted that the new regimen was working although Ileri's mood was down.

Dr. Schopick completed another mental impairment questionnaire in March of 2002. He reiterated his previous opinion that Ileri was experiencing marked restrictions in activities of daily living and social functioning; frequent deficiencies in concentration, persistence, and pace; and repeated episodes of deterioration or decompensation. He found that Ileri was then functioning at a GAF of 55, which indicates moderate difficulties in social or occupational functioning. He also found that Ileri's mental impairment met or equaled § 12.04 of the Listing of Impairments from July of 2000 to March of 2002.

A hearing was held before an ALJ on April 2, 2002. Ileri, who was represented by an attorney, appeared and testified at the

5

hearing. He described the work experiences he has had and his daily activities. A vocational expert, Ralph E. Richardson, also testified. After considering Ileri's work experience and the limitations described by the ALJ, that Ileri could do only routine, repetitive, simple tasks, Richardson concluded that Ileri could not return to any of his past work. He identified alternative unskilled work as an assembler, automobile locator, a cafeteria attendant, or a cleaner that Ileri could do. When additional restrictions were added to avoid work that involved fast-paced production or where the rate of production was integral to job performance, Richardson said work was available with those restrictions as a grounds keeper or an office helper. When he considered the greater limitations found by Dr. Schopick, Richardson found that Ileri would not be able to do any of the identified jobs.

The ALJ issued his decision on October 31, 2002. The ALJ decided that Dr. Schopick's opinions were not entitled to controlling weight because they were contradicted by his own treatment notes and by the opinions of Dr. Spielman and Dr. Schneider. He found that Ileri had severe impairments due to ADHD and depression but that the impairments did not meet or equal a listed impairment. He also found that despite the impairments, Ileri was able to do the work identified by the

6

vocational expert.  As a result, he concluded that Ileri was not disabled for purposes of the Social Security Act.

On November 5, 2002, Ileri requested review of the ALJ's decision.  The Appeals Council issued its decision on February 13, 2003, denying the request for review.  The ALJ's decision then became the final determination of the Commissioner.

## Discussion

As a preliminary matter, Ileri asks the court to remand his case for further administrative proceedings to consider new evidence.  Under sentence six of § 405(g), the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  See also Freeman v. Barnhart, 274 F.3d 606, 610 (1st Cir. 2001).

New evidence is information that was unavailable during the administrative proceeding and is noncumulative.  Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139-140 (1st Cir. 1987).  Evidence is material if it pertains to the time period under consideration and if the it might reasonably have changed the ALJ's decision.  Id.; Kapusta v. Sullivan, 900 F.2d 94, 97

7

(7th Cir. 1989). The good cause requirement is not satisfied by the mere explanation that the evidence did not exist before the ALJ's decision, but instead the claimant must explain his failure to seek the opinion earlier. Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 45 (2d Cir. 1991).

Ileri offers a thirteen-page letter from Dr. Jerrold Pollak, a psychologist, who performed cognitive and neuropsychological testing of Ileri on September 26, 2002. Dr. Pollak found mild deficits in attention, concentration, some memory functions, and some verbal skills, while the rest of the tests showed intact average range functioning. Dr. Pollak found that Ileri's self reporting of symptoms indicated attention deficit disorder and moderate to severe symptoms of depression. As part of his recommendations, Dr. Pollak stated that Ileri's neuropsychiatric status would preclude competitive employment.

Dr. Pollak's letter is at least arguably new evidence that is material to Ileri's claim.[1] Ileri does not explain, however, why he waited until late September, after the hearing, which was held in April of 2002, to obtain another opinion as to the extent and effect of his impairments. In addition, Dr. Pollak's letter

---

[1]Dr. Pollak's opinion that Ileri's impairments would preclude employment is not material, however. See 20 C.F.R. § 404.1527(e).

8

states that he reviewed his assessment and recommendations with Ileri on October 31, 2002. Ileri does not indicate that he attempted to have Dr. Pollak issue a written opinion earlier or on an expedited basis. Therefore, in the absence of a showing of good cause for the delay, Ileri has not satisfied the requirements for a sentence six remand for consideration of new evidence.

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error. Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)). The Commissioner's factual findings are conclusive if based on substantial evidence in the record. 42 U.S.C.A. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

Ileri's application was denied at step five of the

sequential evaluation process set forth in 20 C.F.R. § 404.1520.[2] At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). Although Ileri presents his argument in the form of several different theories, in essence, he challenges the ALJ's decision not to give controlling weight to the opinion of Dr. Schopick as to the severity of his impairments and to instead use other record evidence to support his decision.

The opinions of a treating physician are entitled to controlling weight as long as they are well supported by medically acceptable diagnostic techniques and are not inconsistent with the medical record. See 20 C.F.R. § 404.1527(d)(2). An ALJ is required to give reasons in the disability determination for the weight ascribed to the treating source's opinion. Id.; S.S.R. 96-2P, 1996 WL 374188 *5. Determining a Social Security applicant's residual functional capacity ("RFC"), however, is an administrative decision that is the responsibility of the Commissioner. 20 C.F.R. § 404.1527(e)(2). For that reason, a treating physician's opinion

---

[2]Ileri seeks benefits under both Title II and Title XVI. The provisions are parallel and, therefore, for simplicity the court will refer only to the Title II provisions. See Barnhart v. Thomas, 124 S. Ct. 376, 379 (2003).

10

as to an applicant's RFC, whether his impairments meet or equal a listed impairment, and whether he is disabled is not controlling on the ALJ in making that determination. SSR 96-5P, 1996 WL 374183, *3 (July 2, 1996). See also Diaz v. Chater, 55 F.3d 300, 306 n.2 (7th Cir. 1995); West v. Barnhart, 254 F. Supp. 2d 1216, 1221 (D. Kan. 2003; Gagnon v. Barnhart, 210 F. Supp. 2d 111, 120-21 (D. Conn. 2002); Poland v. Halter, 2001 WL 920038, *6 (D.N.H. Aug. 2, 2001).

In this case, the ALJ reviewed the medical evidence of Ileri's impairments. He explained that he was not giving Dr. Schopick's opinions as to the severity of Ileri's impairments controlling weight because those opinions were contradicted by Dr. Schopick's own treatment notes and the opinions of Dr. Spielman and Dr. Schneider. Although the ALJ focused more on the effects of depression, he did also consider Ileri's impairment due to ADHD. Therefore, the ALJ appropriately decided not to give Dr. Schopick's opinions of Ileri's functional capacity controlling weight.

Contrary to Ileri's arguments, the ALJ did not substitute his own opinions for medical opinions in the record. Instead, he relied on the opinions of Dr. Spielman and Dr. Schneider. He also did not improperly parse Dr. Schopick's opinions. The ALJ considered Ileri's testimony about the range of his daily

11

activities in evaluating his credibility as to his own assessment of the effects of his impairments, which is appropriate.  See, e.g., Avery v. Sec'y of Health & Human Servs., 797 F.2d 19 (1st Cir. 1986).

Ileri does not dispute that the hypothetical described by the ALJ to the vocational expert matched his RFC as provided in the opinions of Dr. Spielman and Dr. Schneider.  The vocational expert's opinion about jobs that Ileri could do, despite his impairments, is substantial evidence that supports the ALJ's decision.  See Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374 (1st Cir. 1982).

Conclusion

For the foregoing reasons, the plaintiff's motion to reverse or remand (document no. 10) is denied.  The Commissioner's motion to affirm (document no. 12) is granted.

The decision of the Commissioner is affirmed.  The Clerk of Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

December 1, 2003

cc:  David F. Bander, Esquire
     David L. Broderick, Esquire
     Rogert D. Turgeon, Esquire

12