Cuthbertson v. SSA                    CV-02-368-JD  06/20/03

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Bryan Cuthbertson

     v.                              Civil No. 02-368-JD
                                     Opinion No. 2003 DNH 108
Jo Anne B. Barnhart, Commissioner,
Social Security Administration


                              O R D E R


     Bryan Cuthbertson seeks judicial review, pursuant to 28
U.S.C. § 405(g), of the decision of the Commissioner denying his
application for social security benefits.  Cuthbertson contends
that the Administrative Law Judge ("ALJ") failed to give adequate
reasons for rejecting the opinions of his treating physician,
failed to properly consider his subjective complaints of pain,
and lacked substantial evidence to support the decision.  The
Commissioner moves to affirm the decision.


                             Background

     Cuthbertson alleges a disability beginning on September 13,
1993, due to a back injury caused by a work accident.  He was
thirty-two years old at the time of the injury and had worked as
a carpenter, a mason, and a pipe fitter.  During the relevant
time, Cuthbertson did not have a high school diploma.  His last
insured date is March 31, 1997.  This appeal follows the

Commissioner's denial of Cuthbertson's second application for benefits.

After the initial injury, Cuthbertson was treated by a chiropractor. By December of 1993, the chiropractor thought that Cuthbertson would be able to return to work in two to three weeks. By February of 1994, the chiropractor thought Cuthbertson has reached his maximum level of improvement and released him from active care. Later in February, Cuthbertson consulted his family physician about back discomfort. The physician found muscle spasms, prescribed medication, and referred him to Concord Orthopedics.

In April of 1994, Dr. William Bruton noted that Cuthbertson described pain in his left low back that radiated into his leg with episodes of numbness. He also complained of upper back pain radiating into his left arm with occasional headaches. Dr. Bruton found no sensory or motor deficits and no bone abnormality shown by x-ray. He diagnosed chronic cervical and lumbar strain and referred Cuthbertson to physical therapy. On May 31, 1994, the physical therapist noted that Cuthbertson was playing basketball in February of 1994, when his back pain returned. Cutherbertson continued with physical therapy with varying results. An MRI performed in August of 1994 showed three small disc herniations. Dr. Bruton referred Cuthbertson to Dr. Nagel

2

for management of chronic back problems.

Dr. Nagel saw Cuthbertson for his first appointment in October of 1994. During his examination, Dr. Nagel found, among other things, abnormality at C5-6, limited range of motion of the left arm, tenderness over four other spinal areas, asymmetric pelvis, limited lumbar range of motion, and rib dysfunction. A bone scan ruled out rib dysfunction as the source of pain at T7. Dr. Nagel concluded that Cuthbertson remained disabled from work, prescribed medication and a brace, and suggested aquatic exercise.

In January of 1995, Cuthbertson reported improvement to Dr. Nagel due to the brace. Dr. Nagel continued his diagnosis of chronic cervical and thoracic strain and sacroiliac dysfunction. He completed a Physical Capacity Evaluation in February of 1995. Dr. Nagel found that Cuthbertson could perform sedentary work, allowing a change of position every fifteen to twenty minutes with a total of sitting and standing for two to three hours in a work day and with certain other limitations. He could also walk for a total of two hours and drive for one to two hours. In May of 1995, Cuthbertson reported little change but a possible worsening of pain. Cuthbertson missed the next four appointments with Dr. Nagel. At his December, 1995, appointment, Dr. Nagel noted little change. Treatments did not provide long-term

3

relief. An MRI showed a degenerative disc at L2-3, but Dr. Nagel thought the sacroiliac joint was the source of Cutherbertson's pain.

In June of 1996, Dr. Nagel again assessed Cuthbertson's activity level. He indicated that Cuthbertson was capable of sedentary work for six to eight hours each day, three to five days each week. Cuthbertson was restricted from repetitive bending and twisting. On October 22, 1996, Rachel Heath, a physical therapist working at New Hampshire Center for Back Care, administered a Physical Capacity Evaluation of Cuthbertson. She concluded that he could work for a maximum of four hours a day in a five day week at the light exertional level (lifting twenty pounds occasionally and ten pounds frequently) with no bending. Heath also found that Cuthbertson could only stand, walk, or sit without support for up to thirty minutes. Cuthbertson's Waddell test results did not show inconsistent or non-anatomical symptoms.

In November of 1996, Dr. Nagel noted a lapse of nine months since the last appointment and that Cuthbertson's condition had not changed. He discussed the recent evaluation done by Rachel Heath and concluded that her findings were very similar to his results. In a letter dated December 4, 1996, Dr. Nagel explained his evaluation in June of 1996, as finding that Cuthbertson could

4

work part time, about four to six hours a day and four to five days a week, at a sedentary exertional level. He noted that Rachel Heath's evaluation found that he could lift more weight but restricted his work day to four hours and that her evaluation was conducted over only a two-hour period. Dr. Nagel believed that Cuthbertson was at maximum medical improvement.

Cuthbertson next returned to Dr. Nagel a year later, in December of 1997. His back condition was unchanged but he had increased right shoulder pain. Cuthbertson reported that he had tried to work at a pizzaria but could not stand up all day. The record does not show medical treatment in the meantime. Cuthbertson continued to see Dr. Nagel without significant improvement. Dr. Nagel increased Cuthbertson's pain medication.

On February 5, 1999, Dr. Nagel completed a "Medical Assessment of Ability to Do Work-Related Activities." As before, he found that Cuthbertson was limited to lifting a maximum of ten pounds, that he could stand, walk, or sit for about two hours, changing position or activity every fifteen minutes, at will, and that he would need to lie down at unpredictable intervals every one to two hours.

Dr. Adams, an orthopeadic surgeon, reviewed Cuthbert's medical records from 1993 through 1998 as a medical expert for a Social Security Disability evaluation. Answering

interrogatories, Dr. Adams stated that the medical evidence in Cuthbertson's record did not have conflicts and was very consistent throughout his treatment. He found objective findings as to range of motion but no objective findings as to neurologic changes or other physical conditions. Dr. Adams thought that Cuthbertson's limitations were due to his subjective pain symptoms and that he was reaching the state of chronic pain syndrome. Consultative opinions from Dr. Campbell and Dr. Nault were that Cuthbertson could lift twenty pounds occasionally, ten pounds frequently, that he could stand, walk, or sit for about six hours in an eight hour day. They found only a limitation on overhead reaching.

Cuthbertson reported to Dr. Nagel on May 17, 1999, that he had moved to Ohio. In his office note for December 19, 2000, Dr. Nagel wrote that Cuthbertson had been incarcerated and had worked without medication during that time. As part of his sentence and following his incarceration, Cuthbertson worked in a restaurant beginning at thirty-two hours each week, which was very difficult, and his pain level was increasing. His hours were later reduced. Cuthbertson said he could continue the restaurant job if he could work twenty hours a week. Based on MRI results showing bulging at discs T7-8 and T8-9, Dr. Nagel thought that Cuthbertson could have lumbardiscogenic pain referred to the

6

sacroiliac joint and that the thoracic disc herniations were probably the cause. Dr. Nagel's Medical Assessment of Ability to do Work-Related Activities was essentially the same as the February of 1999 assessment.

A hearing on Cuthbertson's social security application was held on July 11, 2001. He testified about the history of his injury and pain. He described his daily activities and his condition and limitations. He testified that before his last insured date of March 31, 1997, he lived with a woman who had four young children. At that time, he would do some vacuuming and wash dishes for about five to ten minutes with rests of thirty to sixty minutes between activities. He would microwave dinner for himself and the children, instruct the children to do their expected activities, and set out their clothes for bed.

A vocational expert, James Parker, also testified at the hearing. The ALJ posed a hypothetical of a man who could do light work with a sit-stand option and with limitations of only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and who could not reach in all directions or overhead. The ALJ did not include a limitation on the number of hours in a work day or the number of days in the week for work. Parker testified that, based on the hypothetical, the man could not do heavy skilled or unskilled work, such as his previous

7

work.  Parker said that the hypothetical would permit work as a furniture rental consultant.  When he was asked to change the exertional level to sedentary work, Parker eliminated the furniture retail consultant position.

The ALJ found that Cuthbertson had a residual functional capacity for light work, lifting twenty pounds occasionally and ten pounds frequently, with the limitations posed in the hypothetical at the hearing.  Based on those limitations, the ALJ found that Cuthbertson was not able to return to his previous work.  He found that although Cuthbertson could not do the full range of light work, he could perform a significant range of light work.  The ALJ considered the Medical-Vocational Guidelines as "a framework for decision-making" and concluded that there were a significant number of jobs that Cuthbertson could do.  He used the furniture rental consultant job as an example of a job that Cuthbertson could do.  The ALJ found that Cuthbertson was not disabled.

Cuthbertson's application for benefits was denied.  His request for review was denied by the Appeals Council.  The ALJ's decision, therefore, is the final decision of the Commissioner, subject to judicial review.

Discussion

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error. <u>Manso-Pizarro v. Secretary of Health & Human Servs.</u>, 76 F.3d 15, 16 (1st Cir. 1996) (citing <u>Sullivan v. Hudson</u>, 490 U.S. 877, 885 (1989)). The Commissioner's factual findings are conclusive if based on substantial evidence in the record. 42 U.S.C.A. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quotation omitted). In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." <u>Irlanda Ortiz v. Secretary of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991).

Cuthbertson's application was denied at step five of the sequential evaluation process set forth in 20 C.F.R. § 404.1520.[1]

---

[1]The ALJ is required to make the following five inquiries when determining if a claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment;
> (3) whether the impairment meets or equals a listed impairment;
> (4) whether the impairment prevents the claimant from performing past relevant work; and

9

At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). Cuthbertson contends that the Commissioner's decision denying him benefits is not based on substantial evidence, failed to properly consider Dr. Nagel's opinion, and did not properly credit his subjective complaints of pain.

Cuthbertson challenges the ALJ's residual functional capacity ("RFC") finding. "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996). Determining a Social Security applicant's RFC is an administrative decision that is the responsibility of the Commissioner. 20 C.F.R. § 404.1527(e)(2). For that reason, a treating physician's opinion as to an applicant's RFC is not controlling on the issue. SSR 96-5P, 1996

_____

(5) whether the impairment prevents the claimant from doing any other work.

See 20 C.F.R. § 404.1520.

10

WL 374183, *3 (July 2, 1996).  See also Diaz v. Chater, 55 F.3d 300, 306 n.2 (7th Cir. 1995); West v. Barnhart, 2003 WL 1701985 (D. Kan. Jan. 22, 2003) (pub. ref. not available); Gagnon v. Barnhart, 210 F. Supp. 2d 111, 120-21 (D. Conn. 2002); Poland v. Halter, 2001 WL 920038, *6 (D.N.H. Aug. 2, 2001).

In making an RFC determination on behalf of the Commissioner, the ALJ must consider all relevant evidence in the record, including the opinions and statements by all medical sources.  20 C.F.R. §§ 404.1545(a) & 404.1564; SSR 96-5P, 1996 WL 374183; Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001); Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000).  The ALJ must apply the factors provided in 20 C.F.R. § 404.1527(d) to evaluate the opinions of medical sources.[2]  SSR 96-5P, 1996 WL 374183, *3. The ALJ's RFC determination must provide a clear explanation for its evidentiary basis and reasons for rejecting medical source opinions.  See SSR 96-5P; Fargnoli, 247 F.3d at 41; Clifford v. Apfel, 227 F.3d 863, 874 (7th Cir. 2000); Newton, 209 F.3d at 456; Goatcher v. HHS, 52 F.3d 288, 290 (10th Cir. 1995).

---

[2]The factors provided in § 404.1527(d) are: (1) whether the opinion is based on examination; (2) the length, nature, and extent of the treatment relationship; (3) whether and to what extent the opinion is supported by medical signs and laboratory findings; (4) whether the opinion is consistent with other evidence in the record; (5) whether the opinion is about medical issues related to physician's area of specialty; and (6) any other factors which support or contradict the opinion.

11

In this case, the ALJ explained that his RFC finding, that Cuthbertson was capable of full-time work at the light exertional level with some postural restrictions, was based on the test results provided in October of 1996 by the New Hampshire Center for Back Care, except for the limitation of part-time work. To support an RFC for full-time work, the ALJ noted that Dr. Nagel had indicated that Cuthbertson was capable of more hours of work in his June 1996 assessment and had recognized the discrepancy between his assessment and the Center's assessment without resolving it. The ALJ considered other evidence in the record as to Cuthbertson's ability to work more hours than indicated.

The ALJ pointed to evidence that the chiropractor, in early 1994, expected Cuthbertson to return to work within weeks of the accident and that the increase in pain was due to other activities. He noted that Dr. Nagel appeared to question the severity of Cuthbertson's pain in a September 1998 report, that Cuthbertson did not provide treatment records during the year and a half he was incarcerated, that he worked as a cook as a condition of his "house arrest," and that Cuthbertson was active in taking care of four young children.

The ALJ's RFC finding does not sufficiently explain his determination that Cuthbertson was capable of full-time work, despite the opinions of Dr. Nagel and the Center. The ALJ cites

12

no evidence that Cuthbertson was capable of full-time work, eight hours a day in a five day week, to counter the contrary medical opinions.[3] Dr. Nagel compared his and the Center's assessments and concluded that "the work capacity demonstrated was very similar" because he had Cuthbertson at a lower weight restriction with more hours while the Center used a higher weight restriction but fewer hours. In contrast, the ALJ found that Cuthbertson was capable of more hours of work than the medical assessments at a higher weight level.

It is also undisputed that Cuthbertson's work as a cook started at thirty-two hours and then was reduced to twenty hours a week. His activities in taking care of children in his household were limited; he microwaved food, laid out clothing, and instructed the children to do things. He did some vacuuming and dishes in short efforts spaced with long rest periods. Therefore, the evidence the ALJ cites in support of his RFC does not support his finding.

The Medical Vocational Guidelines may be used to determine disability only if facts fit within the Guideline categories.

---

[3]The state consultative opinions, relied on to deny Cuthbertson's first application, indicate an ability to do light work on a full-time basis. Those opinions, however, were provided before Dr. Nagel's and the Center's assessments were done and, therefore, did not consider those assessments as part of the record. The ALJ does not cite the consultative opinions.

See Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Because the ALJ's RFC finding is not properly supported, he could not use that RFC to determine a Guideline category.

A vocational expert's opinion as to available jobs is substantial evidence sufficient to carry the Commissioner's burden at step five only if it is based on an accurate RFC.  See Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994); Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). Because the ALJ's hypothetical posed to the vocational expert in this case did not accurately reflect the limitation on the number of hours Cuthbertson could work, the expert's opinion is not substantial evidence.  Therefore, substantial evidence does not support the Commissioner's decision that Cuthbertson is not disabled based on either the Guidelines or the vocational expert's opinion.

## Conclusion

For the foregoing reasons, the plaintiff's motion to reverse the decision of the Commissioner (document no. 10) is granted. The Commissioner's motion to affirm (document no. 11) is denied. The case is reversed and remanded to the Social Security Administration for further proceedings.

This is a sentence four remand. Therefore, the clerk of court shall enter judgment and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 20, 2003

cc:   Elizabeth R. Jones, Esquire
      David L. Broderick, Esquire

15