Hynes v. SSA                                    CV-03-062-JD  01/22/04  P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Charles P. Hynes

    v.                                          Civil No. 03-62-JD
                                  Opinion No. 2004 DNH 189

Jo Anne Barnhart, Commissioner,
Social Security Administration


O R D E R


The plaintiff, Charles P. Hynes, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision by the Commissioner of the Social Security Administration, denying his application for social security benefits under Title II of the Social Security Act.  Hynes contends that the Administrative Law Judge ("ALJ") failed to properly assess his residual functional capacity ("RFC") and, as a result, the vocational expert's opinion does not constitute substantial evidence in support of the decision to deny benefits.  The Commissioner moves to affirm the decision.


Background

Hynes applied for disability insurance benefits in November of 2001, alleging disability since August of 1993, primarily due to a back condition.  After his application was denied, he requested a hearing before an ALJ which was held on July 1, 2002.  The ALJ issued her decision on August 7, 2002, denying Hynes's

application based on her findings that Hynes was able to perform work that existed in the relevant economies through his last insured date of March 31, 1996. The Appeals Council denied Hynes's request for review, making the ALJ's decision the final decision of the Commissioner.

In August of 1993, Hynes saw Dr. James Benson for complaints of low back pain following a work injury. X-rays showed no acute injuries and only minimal degenerative changes. Although Hynes reported less pain after physical therapy, he again complained of pain at visits in September and October. A CAT-scan in October of 1993 showed disc bulging at L4-5 and possibly slight nerve encroachment. He tried oral steroids without relief and then underwent epidural injections of steroids.

Hynes was examined on January 10, 1994, by Dr. Sherwin, an orthopaedic surgeon, who diagnosed a low grade lumbar disc prolapse. Dr. Sherwin stated that he would not consider surgery unless Hynes lost a significant amount of weight. Also in January of 1994, Hynes reported to Dr. Benson that he had re-injured his back in a fall and later that he was feeling better. Dr. Richard Hawkins, an orthopaedic surgeon, also saw Hynes during January. He gave Hynes a guarded prognosis due to his obesity and the positive CAT scan. Dr. Hawkins found that Hynes was then capable of doing work that did not involve repetitive lifting of over thirty pounds and that also allowed him to sit,

stand, and walk at frequent intervals.

In April of 1994, Hynes discussed a weight loss plan with Dr. Benson. In May of 1994, Dr. Sherwin stated that Benson was limited to lifting ten pounds and needed the ability to rest, change position, and walk around at will. He also stated that Hynes was not able to bend, reach, push, or pull.

In February of 1995, Hynes was tested by Dr. A. M. Drukteinis, a board certified psychiatrist and forensic specialist. The testing indicated that Hynes's actual perception of pain was quite low but that he perceived pain as having a moderate to marked impact on his ability to function. Other testing indicated a marked degree of depression, mild to moderate anxiety, and a mild to moderate tendency to somatization. Dr. Drukteinis concluded that improvement in Hynes's coping skills and anti-depressants might help him. In March of 1995, Hynes reported to Dr. Drukteinis that Prozac was helping him tremendously. He was then walking up to four miles a day; he was in better spirits, and he hoped to get a light-duty job. In April, Hynes reported much more physical activity, including installing windows in a friend's house. Dr. Drukteinis felt that Hynes should continue Prozac indefinitely but that he did not need further psychological treatment. Hynes had medical care for only minor ailments during the remainder of 1995.

In January of 1996, Hynes saw Dr. Benson for a routine

physical examination and reported that he had no acute complaints.  Dr. Benson noted elevated liver function test results, most likely due to alcohol consumption, but no other abnormalities other than obesity.  Hynes had his Prozac prescriptions refilled during 1996.  In September of 1996, Hynes reported renewed back pain after he fell into a ditch.  X-rays were negative, and the doctor diagnosed back strain.

In December of 2001, Dr. Burton Nault, a state agency consultative physician, reviewed Hynes's records and concluded that he was able to perform work at a medium exertional level through the end of March of 1996.  Dr. Michael Schneider, a state agency psychologist, reviewed Hynes's records and concluded that he had not established that he had any severe mental impairment that persisted for at least twelve months.  Dr. Nault's assessment was reviewed in January 2002 and affirmed.  In June of 2002, Dr. Robert Johnson, who had treated Hynes since 1999, reviewed his records and stated that he did not believe that Hynes could have performed any type of full-time work from 1993 though 1996.

At the hearing before the ALJ, Hynes was present and was represented by counsel.  Hynes testified that before March of 1996, he spent most of the time sitting around the house, that he tried to help his wife with housework but could only stand for five minutes while doing the dishes, and that he had to stop

4

doing yard work because of problems with his knees and back.  The ALJ posed a hypothetical to the vocational expert describing a person who could do light work activities and then added certain postural limitations and limited contact with the public. Hynes's attorney also added limitations as to pace in the job. In response, the vocational expert testified that jobs existed, in the relevant communities, that a person described by the hypotheticals could do and that even with the hypothetical jobs as a parking lot attendant existed in the relevant economies.

In her decision, the ALJ found that before his insured status expired on March 31, 1996, Hynes had an RFC for light work restricted only by an inability to climb.  She found that he could not do any of his past work, which consisted of work as a concrete laborer and a form carpenter.  She concluded, however, based on the vocational expert's testimony, that because jobs existed that he could do, such as a cashier, an outside deliverer, a bottling line attendant, a parking lot attendant, and a checker, he was not disabled.

## Discussion

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error.  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877,

5

885 (1989)).  The Commissioner's factual findings are conclusive if based on substantial evidence in the record.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted).  In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

Hynes's application was denied at step five of the sequential evaluation process set forth in 20 C.F.R. § 404.1520.[1] At step five, the Commissioner has the burden to show that despite the applicant's severe impairment, he retained the residual functional capacity to do work other than his prior work

---

[1]The ALJ is required to make the following five inquiries when determining if a claimant is disabled:

(1) whether the claimant is engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or equals a listed impairment;
(4) whether the impairment prevents the claimant from performing past relevant work; and
(5) whether the impairment prevents the claimant from doing any other work.

See 20 C.F.R. § 404.1520.

6

and that work the claimant can do exists in significant numbers in the relevant economies.  See Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  The opinion of a vocational expert constitutes substantial evidence to support the Commissioner's decision at step five as long as the hypothetical posed to the vocational expert accurately reflected the claimant's residual functional capacity and limitations.  Rose v. Sec'y of Health & Human Servs., 35 F.3d 13, 19 (1st Cir. 1994); Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374 (1st Cir. 1982).

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996).  Determining a Social Security applicant's RFC is an administrative decision that is the responsibility of the Commissioner.  20 C.F.R. § 404.1527(e)(2).  In making an RFC determination on behalf of the Commissioner, the ALJ must consider all relevant evidence in the record, including the opinions and statements by all medical sources.  20 C.F.R. §§ 404.1545(a) & 404.1564; SSR 96-5P, 1996 WL 374183; Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001); Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000).  The ALJ's RFC determination must

7

provide a clear explanation for its evidentiary basis and reasons for rejecting medical source opinions.  See SSR 96-5P; Fargnoli, 247 F.3d at 41; Clifford v. Apfel, 227 F.3d 863, 874 (7th Cir. 2000); Newton, 209 F.3d at 456; Goatcher v. HHS, 52 F.3d 288, 290 (10th Cir. 1995).

In this case, the ALJ found that Hynes was capable of light work with only a limitation as to climbing.  She did not explain the source of that RFC assessment.  The ALJ explained that she did not give weight to Dr. Johnson's opinion, that Hynes was unable to lift or carry and that it would have been impossible for him to hold a full-time job, because it was contradicted by Dr. Benson's contemporaneous treatment notes.  In her opinion, the ALJ also noted that both Dr. Sherwin and Dr. Hawkins, in 1994, limited Hynes to work that would allow him to frequently change position between sitting, standing, and walking or to be able to change position at will.  She did not include those limitations in her RFC, however, and she did not explain why she excluded them.  As such, the ALJ failed to clearly explain the evidentiary basis of her RFC assessment and her reasons for rejecting Hynes's treating physicians' opinions.

The ALJ's hypotheticals to the vocational expert were based on her RFC assessment that did not include all of the limitations found by Hynes's treating physicians, which the ALJ did not properly exclude.  As such, the hypotheticals were incomplete.

8

The vocational expert's opinion, given in response to incomplete hypotheticals, does not constitute substantial evidence to support the Commissioner's decision that work exists that Hynes could do.  Therefore, the decision to deny benefits is not supported by substantial evidence.

Conclusion

For the foregoing reasons, the plaintiff's motion to reverse (document no. 8) is granted.  The defendant's motion to affirm (document no. 10) is denied.  The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this order.

As this is a sentence four remand, the clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 22, 2004

cc:  Raymond J. Kelly, Esquire
     David L. Broderick, Esquire

9